BARCLAE v ZARB

Docket No. 299986. Submitted April 2, 2013, at Detroit. Decided April 16, 2013, at 9:00 a.m.

Anthony L. Barclae, CYNBA International, Inc., and Robot Defined, LLC, brought an action in the Wayne Circuit Court against Ernest M. Zarb, a senior vice president of Comerica Bank, alleging, in part, that Zarb made fraudulent misrepresentations to plaintiffs before Robot Defined and Comerica Bank entered into a debt purchase agreement wherein Robot Defined agreed to purchase outstanding loans made by Comerica Bank to Robot Printing, Inc., and Robot Properties, L.L.C. The same day the debt purchase agreement was executed, Comerica Bank, Robot Printing, and Robot Properties executed a forbearance agreement in which Comerica Bank agreed to forbear from taking action in regards to defaults on the loans at issue in the debt purchase agreement. Zarb answered, denying that he made false statements and claiming that neither he, Barclae, or CYNBA were parties to the debt purchase agreement or the forbearance agreement. Plaintiffs filed a demand for a jury trial, which Zarb moved to strike. The court, Robert L. Ziolkowski, J., granted the motion to strike. The Court of Appeals granted plaintiffs' application for leave to appeal in an unpublished order, entered April 29, 2009 (Docket No. 289878). The Court of Appeals then reversed the order granting the motion to strike and remanded the matter to the trial court, concluding that the plain language of the jury trial waiver did not extend to agents, such as Zarb, who did not sign the contract in their individual capacities. *Barclae v Zarb*, unpublished opinion per curiam, issued January 18, 2011 (Docket No. 289878). While the appeal was pending, plaintiffs filed a second amended complaint in which they alleged, in part, that they had been unaware when Zarb told them that they could purchase Robot Printing's assets that Robot Printing had already sold the "Robocolor Process" asset in order to reduce the debt owed to Comerica Bank and procure working capital. Comerica Bank then filed a separate suit against Robot Defined, alleging breach of contract and seeking indemnification for losses arising out of Robot Defined's failure to consummate the debt sale agreement

after it learned that the Robocolor Process had already been sold. Robot Defined counterclaimed for the loss of the money it advanced to Robot Printing as a result of Comerica Bank's alleged fraud and seeking Robot Printing's receivables allegedly wrongfully retained by Comerica Bank under theories of breach of contract, fraud, conversion, and unjust enrichment. It also alleged that the bank had retained Robot Defined's nonrefundable deposit and had therefore elected its remedy and could not seek indemnification. The court consolidated the two actions, retaining the title and docket number of the action brought by Barclae. Zarb moved for summary disposition, arguing, in part, that the statute of frauds, MCL 566.132, was applicable and precluded plaintiffs' action. Comerica bank also moved for partial summary disposition with regard to the majority of Robot Defined's counterclaims. The court granted the motions by Zarb and Comerica Bank. The court held that the statute of frauds was applicable, that a financial accommodation had been reached for purposes of application of the statute of fraud, and that Zarb was an agent of Comerica Bank. The only issue remaining in the consolidated cases was Comerica Bank's indemnity claim against Robot Defined. The court entered an order dismissing the claims of Barclae, CYNBA, and Robot Defined (hereafter "plaintiffs") against Zarb and the counterclaims against Comerica Bank. Plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court did not err by applying MCL 566.132 to plaintiffs' claims. The statute plainly states that a party is precluded from bringing a claim, no matter its label, against a financial institution to enforce the terms of an oral promise to waive a loan provision.

2. There was clearly a "financial accommodation" in this case for purposes of MCL 566.132(2). The bank, through Zarb, agreed that it would not pursue immediate liquidation of Robot Printing's assets, even though Robot Printing had defaulted on its loan obligations to the bank. The agreement to temporarily withhold seizing collateral was a financial accommodation that benefited Robot Printing and plaintiffs. The fact that the bank did not place itself at additional risk of exposure to loss is not dispositive of the question whether a financial accommodation was reached.

3. The "present agreement" generated by Zarb at the parties' April 20, 2007, meeting does not meet the signed writing requirement of MCL 566.132 because there was no mutuality of agreement to form a valid contract. The trial court properly concluded that the document did not satisfy the statute of frauds.

4. The law of the case resulting from the prior decision of the Court of Appeals in this matter is that Zarb was acting as an agent of Comerica Bank during the parties' negotiations. As an agent of a financial institution, Zarb could avail himself of the statute of frauds defense.

5. Plaintiffs never performed any aspect of the alleged agreement, therefore, their claim that their partial performance precluded the application of MCL 566.132 was not supported by the evidence.

6. Plaintiffs failed to prove that Zarb owed them a duty to reveal that the Robocolor Process had been sold or that Zarb's failure to disclose the sale was calculated to defraud plaintiffs. Plaintiffs failed to demonstrate that their damages were the result of the alleged silent fraud. Plaintiffs did not prove their silent fraud claim.

7. Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary a written contract, is not admissible to vary the terms of a clear and unambiguous contract. When a contract contains an explicit merger clause, parol evidence is inadmissible to determine whether the contract was merged. Fraud makes a contract voidable at the instance of the innocent party and parol evidence may be admissible to demonstrate fraud. However, only certain types of fraud would vitiate a contract where there is a valid merger clause. When a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause.

8. Because plaintiffs do not seek to add to or vary the terms of the May 4 debt purchase agreement, parol evidence could be introduced to show that plaintiffs were fraudulently induced into signing the agreement.

9. Plaintiffs had standing to bring their action.

10. The trial court did not err by dismissing Robot Defined's claim against Comerica Bank regarding the return of its $500,000 deposit.

11. The trial court properly held that Comerica Bank was under no obligation to share the receivables of Robot Printing with Robot Defined.

12. Because Robot Defined sought to enforce an oral agreement and the statute of frauds precludes such claims, Robot Defined's claims for conversion, fraud, and unjust enrichment may not succeed.

Affirmed.

1. STATUTE OF FRAUDS — ORAL PROMISES — FINANCIAL INSTITUTIONS.

The statute of frauds precludes a party from bringing a claim, no matter its label, against a financial institution to enforce the terms of an oral promise to waive a loan provision.

2. STATUTE OF FRAUDS — WORDS AND PHRASES — FINANCIAL ACCOMMODATIONS.

A financial institution's agreement to temporarily withhold seizing the collateral of a party that has defaulted on its loan obligations to the financial institution is a "financial accommodation" for purposes of the statute of frauds; a financial institution need not be exposed to an additional risk of loss as a result of the financial accommodation in order for the writing requirement of the statute of frauds to apply (MCL 566.132).

3. STATUTE OF FRAUDS — WRITINGS.

A writing, to satisfy the statute of frauds, need not contain all the terms of the agreement; the admitted facts and extrinsic evidence showing the surrounding circumstances may be considered in determining whether a writing satisfies the statute of frauds (MCL 566.132).

4. CONTRACTS — REQUIREMENTS OF VALID CONTRACT.

A valid contract requires parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation.

5. AGENCY — CONTRACTS.

An agent can sue in his or her name to enforce a contract only when the agent has contracted with the other party on behalf of the principal in the agent's own name or in such manner so as to make it the agent's personal contract.

6. AGENCY — STATUTE OF FRAUDS — EMPLOYEES OF FINANCIAL INSTITUTIONS.

A financial institution can act only through its agents, principals, and employees; employees of financial institutions are protected under the provisions of the statute of frauds pertaining to financial institutions (MCL 566.132[2] and [3]).

7. FRAUD — SILENT FRAUD.

A plaintiff, in order to maintain an action for silent fraud, must show that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure; the plaintiff cannot merely prove that the defendant failed to disclose something, but instead, must show some type of representation by words or actions that was false or misleading

and was intended to deceive; in order for the suppression of information to constitute silent fraud, there must exist a legal or equitable duty of disclosure.

8. CONTRACTS — PAROL EVIDENCE — MERGER CLAUSES.

Parol evidence of contract negotiations or of prior or contemporaneous agreements that contradict or vary a written contract is not admissible to vary the terms of a clear and unambiguous contract; parol evidence is not admissible to determine whether a contract was merged when the contract contains an explicit merger clause.

9. FRAUD — CONTRACTS — PAROL EVIDENCE — MERGER CLAUSES.

Fraud makes a contract voidable at the instance of the innocent party; parol evidence may be admissible to demonstrate fraud; fraud that relates solely to an oral agreement that was nullified by a valid merger clause in a contract has no effect on the validity of the contract; the only type of fraud that will vitiate a contract when the contract contains a valid merger clause is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause.

*Garratt & Bachand, PC* (by *C. William Garratt* and *Lauren B. Tritt*), for Anthony L. Barclae, CYNBA International, Inc., and Robot Defined, LLC.

*Bodman PLC* (by *Robert G. Brower, Jeffrey G. Raphelson*, and *Jonathan A. Young*) for *Ernest M. Zarb*.

Before: BORRELLO, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM. Plaintiffs, Anthony L. Barclae, CYNBA International, Inc., and Robot Defined, LLC, appeal as of right an order granting summary disposition in favor of defendant, Ernest Zarb. We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

Some basic facts of this case were set forth in a prior appeal:

According to plaintiffs, Robot Printing, Inc., and Robot Properties, L.L.C., were businesses that needed working capital in 2007, but their assets were collateral for Comerica Bank loans. Further according to plaintiffs, Zarb (a senior vice president for Comerica Bank) made fraudulent misrepresentations to plaintiffs in April 2007 to induce them "to advance hundreds of thousands of dollars" for these assets to, and for the benefit of, Robot Printing, Inc., Robot Properties, L.L.C., and Comerica Bank. In return for the advance, plaintiffs expected to collect Robot Printing, Inc.'s receivables after April 17, 2007.

After the allegedly fraudulent misrepresentations by Zarb were made, on May 4, 2007, Robot Defined and Comerica Bank entered into a debt purchase agreement. According to the agreement, Robot Defined agreed to purchase outstanding loans made by Comerica Bank to Robot Printing Inc. and Robot Properties, L.L.C. The outstanding principal on the loan notes exceeded $7,000,000.00. The purchase price was the amount outstanding on the notes, less $800,000 (and certain fees). On the same day, a forbearance agreement was executed. In that agreement, Comerica Bank agreed to "forbear from taking action" in regard to defaults on the loans at issue in the debt purchase agreement. [*Barclae v Zarb*, unpublished opinion per curiam of the Court of Appeals, issued January 18, 2011 (Docket No. 289878), p 1.][1]

While the appeal was pending, plaintiffs filed a second amended complaint. The second amended complaint refers to the "Robocolor Process"—an intangible property "involving a potentially patentable printing process of substantial commercial value that was not available to Robot Printing's competitors." The second amended complaint alleged that Robot Printing sold the Robocolor Process in order to reduce the debt

---

[1] This Court ultimately concluded that, because Zarb was not a signatory of the documents as an individual, he could not take advantage of the jury-waiver provisions. Therefore, this Court ordered that plaintiffs' demand for a jury trial be reinstated. *Barclae*, unpub op at 4-5.

owed to Comerica and to procure working capital, an act that clearly benefitted Comerica. When plaintiffs were presented with the opportunity to purchase some of Robot Printing's assets in March 2007, they were unaware that the Robocolor Process had been sold and was no longer an asset. Plaintiffs alleged that, in spite of Comerica's knowledge of the sale, Zarb represented that plaintiffs could purchase Robot Printing's assets "including without limitation the Robocolor Process (whether by taking possession of the collateral and selling it as a secured creditor or by consenting to Robot's sale of the assets and applying sales proceeds to Robots' debt to Bank)." In addition, although plaintiffs had hoped to purchase Robot Printing's assets, Comerica demanded that plaintiffs "purchase all of Bank's rights against Robot and their guarantors for additional millions of dollars," effectively converting an "asset sale" into a "debt sale."

In the meantime, Comerica filed a suit against Robot Defined, alleging breach of contract and seeking indemnification for losses arising out of Robot Defined's failure to consummate the debt sale agreement. Robot Defined counterclaimed for the loss of money it advanced to Robot Printing as a result of Comerica's fraud. Robot Defined alleged in its first amended counterclaim that "[t]hroughout April 2007, Bank made a series of misrepresentations that Bank had the present intent and ability to cause the sale of certain assets of Robot [Printing], including without limitation the Robocolor Process (whether by taking possession of the collateral and selling it as a secured creditor or by consenting to Robot's sale of the assets and applying sales proceeds to Robot's debt to Bank)." Robot Defined further alleged that the bank wrongfully retained Robot Printing's receivables generated after April 17, 2007, which should have been applied to Robot Defined's

working capital. Robot Defined alleged breach of contract, fraud, conversion, and unjust enrichment. It also alleged that Comerica had retained Robot Defined's $500,000 nonrefundable deposit and that the bank had, therefore, elected its remedy against Robot Defined and could not seek indemnification. The trial court consolidated the two cases, retaining the title and docket number of the action brought by Barclae.

Zarb moved for summary disposition on plaintiffs' claims, arguing that the statute of frauds, MCL 566.132, precluded plaintiffs from bringing an action for breach of alleged oral representations regarding financial accommodations. Zarb argued that, as an employee of Comerica, he was protected under the statute by basic agency principles. Additionally, Zarb argued that neither Barclae nor CYNBA had standing to bring the action because they were mere investors in Robot Defined, and Robot Defined was the only plaintiff who was a party to the debt sales agreement. Further, because of the merger clause in the parties' agreement, Robot Defined was also barred from bringing its claims regarding prior oral promises.

Comerica moved for partial summary disposition with regard to the majority of Robot Defined's counterclaims. Citing MCL 566.132, the statute of frauds, Comerica argued that Robot Defined was in no position to seek enforcement of any alleged oral agreements. Contrary to plaintiffs' contentions, the handwritten notes taken by Zarb at one of the meetings during the negotiation process did not establish a contract for purposes of circumventing the statute of frauds. Additionally, Comerica argued that the merger clause in the debt sale agreement barred evidence of any other agreement. Comerica also argued that there could be no claim for conversion because Robot Defined failed to

allege that the bank had an obligation to return "specific money." Comerica also pointed out that, pursuant to the debt sales agreement, Robot Defined had disclaimed any reliance on any statements or representations made by the bank's employees. Comerica argued that it was not unjustly enriched because there was no evidence that Robot Defined's investment increased the liquidation value of Robot Printing's assets. Finally, Comerica maintained that the language of the parties' agreement did not show an intention to limit Comerica's damages to the nonrefundable deposit; instead, the $500,000 deposit was forfeited as a penalty.

Plaintiffs filed separate responses opposing both Zarb's motion for summary disposition and Comerica's motion for partial summary disposition. Plaintiffs pointed out that when a debtor like Robot Printing defaults on a debt, a bank would generally either sell its debt instruments or conduct an "Article 9 sale" of collateral. Robot Printing needed working capital during the economic downturn, so with Comerica's encouragement, Robot Printing sold its Robocolor Process to a nonparty, RoboColor, L.L.C. With the sale, Robot Printing was able to stay in business and generate new receivables, to the benefit of Comerica. Plaintiffs hoped to purchase the Robocolor Process in an Article 9 sale. At the time, plaintiffs had no idea that the process had already been sold, yet Zarb made a series of statements that the bank was in a position to sell Robot Printing's assets. Zarb even generated a "present agreement" at the parties April 20, 2007, meeting, but then later did an "about face" and refused to proceed with the sale until plaintiffs agreed to purchase the debt instruments. Plaintiffs were put in a position whereby they would lose the many thousands of dollars already invested in Robot Printing to keep it "afloat" if they did not sign the agreement on Zarb's terms. However, Zarb

knew that the Robocolor Process had been sold months earlier at the bank's request and for its benefit. "So, in this action, Plaintiffs seek damages from Zarb, not the Bank, for his fraudulent misrepresentations (admittedly beyond his authority as a Bank officer) about the intent and ability to sell Printing assets (not the Bank's debt instruments)."

Plaintiffs argued that, contrary to Zarb's assertion, plaintiffs had standing to bring the lawsuit. Plaintiffs alleged that Anthony Barclae and CYNBA were not merely investors of Robot Defined; rather, they directly advanced over $1 million to Robot Printing and its creditors and were directly damaged by Zarb's deceit.

Plaintiffs also denied that their claims were barred by MCL 566.132. Plaintiffs were not seeking to enforce any agreement; instead, they sought damages for money advanced to Robot Printing before the May 4, 2007, agreement was executed. Additionally, the statute applies only to the "financial accommodations" relating to loans and extensions of credit. Zarb was not a "financial institution" or "affiliate" within the meaning of the statute. To the extent the statute might apply, plaintiffs argued that Zarb's April 20, 2007, "present agreement" satisfied the writing requirement of the statute.

Finally, plaintiffs argued that the merger clause in the parties' agreement did not bar plaintiffs' claims because the merger clause only referred to prior agreements or understandings with respect to the *debt* sale and does not mention prior agreements relating to the sale of Robot Printing's *assets*. Even if the merger clause applied, the bank's fraudulent conduct vitiated the agreement. Further, neither Barclae nor CYNBA were parties to the contract and the merger clause is not binding on them.

The trial court granted the motions, holding:

> And in reviewing the -- reviewing the statute [and] the case law, it's this court's opinion that -- that this statute is applicable in this case.

> And that -- that this was a financial accommodation. That Mr. Zarb was an affiliate of the bank.

> And, therefore, I'm going to grant the motion for summary disposition as to Mr. Zarb. Since the contract was not in writing.

> It was purported to be in writing. There was some kind of -- some figures that were jotted down during some discussion that was -- had the -- had the printed name of Mr. Zarb in the upper right hand corner, I think it was his first name only.

> And it was purported that that may have been sufficient to satisfy the statute of frauds.

> However, it's this court's conclusion that that does not. It's simply notes pursuant to negotiations.

> If it doesn't satisfy the elements of the contract, it's not signed and, therefore, I'm going to grant the motion.

> *Mr.* [C. William] *Garratt* [counsel for plaintiffs]: So is it your Honor's ruling that each and every cause of action against Mr. Zarb is dismissed or merely those that sound, in essence, in contract?

> *The Court*: Well, it appears -- it -- each and every one. Each and every one. And similarly with the bank, pursuant to the same statute.

> *Mr.* [Robert] *Brower* [counsel for Zarb and Comerica]: That would be on the counter-claim against the bank.

> *The Court*: Right.

> *Mr. Brower*: I understand the court's ruling.

> *Mr. Garratt*: So every claim -- every claim, no matter how it sounds --

> *The Court*: (Interposing) Right.

*Mr. Garratt*: -- under whatever theory against the bank by Robot Defined is dismissed?

*The Court*: Right.

The only issue remaining in the consolidated cases was Comerica's indemnity claim against Robot Defined. The trial court entered an order dismissing plaintiffs' claims against Zarb and counterclaims against Comerica on August 12, 2010. Plaintiffs now appeal as of right.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). We must review a "motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We also review de novo matters of statutory interpretation. *Stanton v Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002). The goal of statutory interpretation is to discern and give effect to the intent of the Legislature. *Odom v Wayne Co*, 482 Mich 459, 467; 760 NW2d 217 (2008). To that end, the first step in determining legislative intent is the language of the statute. *Id*. If the statutory language is unambiguous, then the Leg-

islature's intent is clear and judicial construction is neither necessary nor permitted. *Id*.

Finally, the question of standing is a question of law that we review de novo on appeal. *Young v Indep Bank*, 294 Mich App 141, 143; 818 NW2d 406 (2011).

### III. STATUTE OF FRAUDS

Plaintiffs first argue that the trial court erred by applying MCL 566.132 to their claims. We disagree.

The statute of frauds, MCL 566.132, provides, in relevant part:

(2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

(a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

(3) As used in subsection (2), "financial institution" means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act, Act No. 173 of the Public Acts of 1987, being sections 445.1651 to 445.1683 of the Michigan Compiled Laws, or Act No. 125 of the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan Compiled Laws, or an affiliate or subsidiary thereof.

"[T]he role of the judiciary is to apply the statute of frauds as written, without second-guessing the wisdom

of the Legislature." *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548 n 4; 619 NW2d 66 (2000). The language of the statute is unambiguous. "It plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Id.* at 550 (concluding that promissory estoppel actions are barred under the statute). "[T]he Legislature used the broadest possible language . . . to protect financial institutions by not specifying the types of 'actions' it prohibits, eliminating the possibility of creative pleading to avoid the ban." *Id.* at 551.

### A. WAS THERE A FINANCIAL ACCOMMODATION?

Plaintiffs argue that there was no "financial accommodation" because Comerica did not "advance funds at a risk of loss."

"Financial accommodation" is not defined in MCL 566.132(2). This Court will "give undefined statutory terms their plain and ordinary meanings" and, in doing so, may consult dictionaries. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). In defining an undefined term, this Court must also consider its placement and purpose in the statutory scheme. *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008). In *FEI Co v Republic Bank*, unpublished opinion per curiam of the Court of Appeals, issued August 10, 2006 (Docket No. 268700), p 2, this Court explained:

> The statute does not define "financial accommodation," but plaintiff admits that it was an "accommodation." According to *Random House Webster's College Dictionary* (1997), "financial" means "of or pertaining to those commonly engaged in dealing with money and credit." An agreement to delay a sheriff's foreclosure sale constitutes

an accommodation pertaining to those engaged in dealing with money and credit, because a delay in a foreclosure sale is an accommodation that would be made by a lender or creditor. Therefore, an agreement to delay a foreclosure sale is an agreement to make a "financial accommodation" within the scope of MCL 566.132(2)(a).

We recognize that the *FEI* case is unpublished and, therefore, not binding precedent on this Court, MCR 7.215(C)(1); nevertheless, we find it to be both instructive and persuasive and, therefore, adopt its analysis. See *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

Additionally, in *Williams v Pledged Property II, LLC*, 2012 WL 6200270 (CA 6, 2012), the United States Court of Appeals for the Sixth Circuit rejected the notion that a "financial accommodation" requires that a bank be exposed to a risk of loss in order for the writing requirement to be triggered. *Id.* at 3. Citing *FEI*, the court, *id.*, noted that "the Michigan Court of Appeals has clearly interpreted [MCL 566.132(2)] to include promises to delay foreclosure sales, holding that 'an agreement to delay a foreclosure sale is an agreement to make a "financial accommodation." ' "[2]

There was clearly a "financial accommodation" in this case. The bank, through Zarb, agreed that it would not pursue immediate liquidation of Robot Printing's assets, even though Robot Printing had defaulted on its loan obligations. An agreement to temporarily not seize collateral was a financial accommodation that no doubt benefited Robot Printing, but similarly benefited plaintiffs, who were hoping to take over the business and

---

[2] See also *Tri-Mount/Preserves Bldg Co, Inc v TCF Nat'l Bank*, unpublished opinion per curiam of the Court of Appeals, issued October 4, 2005 (Docket No. 254077), p 3 (MCL 566.132(2) applied where "[t]he sale of the land was intertwined with the extension of credit").

make it a going concern. The fact that Comerica did not place itself at additional risk of exposure is not dispositive.

Plaintiffs argue that, if the statute of frauds does apply, then the parties' April 20, 2007, "present agreement" satisfies the writing requirement.

"Our Supreme Court has declined to adopt narrow and rigid rules for compliance with the statute of frauds." *Kelly-Stehney & Assoc, Inc v MacDonald's Indus Prod, Inc (On Remand)*, 265 Mich App 105, 111; 693 NW2d 394 (2005). To satisfy the statute of frauds, a writing need not contain all the terms of the agreement to be enforceable, and the writing may be considered with the admitted facts and extrinsic evidence showing the surrounding circumstances. *Id.* at 114. For that reason, a case-by-case approach is necessary—"[s]ome note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute [of frauds] depends in each case upon the setting in which it is found." *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 368; 320 NW2d 836 (1982) (quotation marks and citation omitted).

> We should always be satisfied with some note or memorandum that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by enforcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informal-

ity in the memorandum or its incompleteness in detail.
[*Kelly-Stehney*, 265 Mich App at 114 (quotation marks,
brackets, and citation omitted).]

To satisfy the statute of frauds, the Restatement
Second provides that a writing must contain the follow-
ing elements:

Unless additional requirements are prescribed by the
particular statute, a contract within the Statute of Frauds
is enforceable if it is evidenced by any writing, signed by or
on behalf of the party to be charged, which

(a) reasonably identifies the subject matter of the con-
tract,

(b) is sufficient to indicate that a contract with respect
thereto has been made between the parties or offered by
the signer to the other party, and

(c) states with reasonable certainty the essential terms
of the unperformed promises in the contract. [1 Restate-
ment Contracts, 2d, § 131, p 334.]

Even taking the evidence in a light most favorable
to plaintiffs, the parties' April 20 "agreement" does
not meet the signed writing requirement of MCL
566.132. A valid contract requires: (1) parties compe-
tent to contract, (2) a proper subject matter, (3) legal
consideration, (4) mutuality of agreement, and (5)
mutuality of obligation. *Mallory v Detroit*, 181 Mich
App 121, 127; 449 NW2d 115 (1989). Here, there was
no mutuality of agreement. Although the document
refers to the parties' "present agreement," it also
includes terms and phrases such as "New Debt Sale,"
"take this deal," and a number of handwritten items.
"ERNIE" is handwritten in the top-right corner of
the document. Even if the name satisfied the signing
requirement, the document is clearly a reflection of
ongoing negotiations and, therefore, the trial court

properly concluded that the document did not satisfy the statute of frauds.

### C. CAN ZARB AVAIL HIMSELF OF MCL 566.132(3)?

Plaintiffs argue that Zarb was neither a "financial institution" nor an "affiliate" under the statute. They claim: "If a bank's officer or employee were to be deemed, 'a financial institution' within the meaning of MCL 566.132(3), the Legislature would have included 'officers' or 'employees' in the definition of 'financial institution.' " Additionally, plaintiffs claim that an "affiliate" is limited to those who are affiliates of licensees under the Mortgage Brokers, Lenders, and Servicers Licensing Act, MCL 445.1651 *et seq.* (mortgage brokers, lenders, and servicers).

We conclude that, although the trial court and the parties discussed whether Zarb could be considered an "affiliate" under MCL 566.132(3), such an inquiry was unnecessary. Basic agency principles allow Zarb to assert the statute of frauds defense.

Plaintiffs do not dispute that Comerica is a "financial institution" as defined in MCL 566.132(3). Because a corporation may only act through its officers and agents, an agency relationship exists between a corporation and its officers. *In re Moroun*, 295 Mich App 312, 332; 814 NW2d 319 (2012). Anthony Barclae testified that he ascertained whether Zarb "really [could] negotiate this deal." "I assumed that [Zarb] was a representative of Comerica Bank and he was representing Comerica Bank and – not so much himself. He was a bank representative." Barclae acknowledged that Zarb had the authority to bind the bank.

Agency principles were discussed in the prior appeal:

Next, plaintiffs claim that because Zarb did not sign the debt purchase agreement and forbearance agreement, he cannot invoke the jury trial waivers in the agreements. We agree.

* * *

We conclude that, according to the plain language of the waiver provisions, "each party" agreed to waive any right to trial by jury. In Zarb's answer to plaintiff's [sic] complaint, he admitted that he was not a party to the agreement between Robot Defined and Comerica Bank. To interpret these waivers to apply to Zarb, this Court would be required to rewrite the plain language of the clauses to not only apply to "each party," but also "agents of each party." Such an interpretation would render language referencing the parties and their agents elsewhere in the agreements surplusage.

* * *

Our conclusion with respect to [these] jury trial waivers also corresponds with traditional agency theory. A contract between a principal and a third party is enforceable by the principal against the third party. 3 Am Jur 2d, Corporations, § 313. Only where an agent contracts with the party on behalf of the principal, but in the agent's own name "or in such manner as to make it the agent's personal contract," can the agent sue in his own name to enforce the contract. Here, Comerica Bank could invoke the jury trial waiver, but because Zarb did not sign the agreements as an individual or make the agreements his own personal contracts, Zarb cannot invoke the jury trial waiver as an individual. Thus, the trial court erred when it granted Zarb's motion to strike plaintiffs' jury trial demand. [*Barclae*, unpub op at 3-5 (some citations omitted).]

Because of this Court's prior decision, it is the law of the case that Zarb was acting as an agent of Comerica during the parties' negotiations.

> Under the law of the case doctrine, if an appellate court resolves a legal issue and remands to the trial court for further proceedings, the legal question determined by the appellate court will not be decided differently in a subsequent appeal in the same case if the facts remain materially the same. Stated another way, the doctrine is applied when the prior appeal involves the same set of facts, the same parties, and the same question of law . . . . [*In re Petition by Wayne Co Treasurer*, 265 Mich App 285, 297; 698 NW2d 879 (2005) (quotation marks and citations omitted).]

Although the issue in the prior appeal related to a jury waiver in the parties' agreement, the same legal question was involved—that being Zarb's status as an agent of Comerica. There is no question that Zarb was acting on Comerica's behalf when negotiating with plaintiffs. Plaintiffs also admit the agency relationship. They must, because Robot Defined's numerous counterclaims against Comerica are founded on such agency principles.

Plaintiffs argue that MCL 566.132(3) does not specifically include an "employee" of a financial institution and, therefore, Zarb cannot avail himself of the statute of frauds defense. We disagree. A financial institution can only act through its agents, principals, and employees. If agents and employees of a financial institution were not included within the statute, then it would render that portion of the statute useless. This Court must avoid interpreting statutes in a manner that would render any part of the statute nugatory. *Robinson v City of Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010). If employees of financial institutions were not protected, the statute of frauds could be easily circumvented merely by suing employees of a financial institution. Given that Zarb was an agent for Comerica at the time of the parties' negotiations, he may avail himself of the defense of the statute of frauds.

### D. DOES PART PERFORMANCE PRECLUDE APPLICATION OF MCL 566.132?

Finally, plaintiffs argue that, if the statute of frauds applies, it was rendered inapplicable because of part performance. Plaintiffs maintain that they relied on Zarb's fraudulent statements and "paid him hundreds of thousands of dollars to and for [Robot] Printing and for Comerica's benefit."

> If one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute, equity will regard the contract as removed from the operation of the statute. The contract to be enforced must be established by clear and convincing evidence. [*Guzorek v Williams*, 300 Mich 633, 638-639; 2 NW2d 796 (1942) (citations omitted).][3]

Plaintiffs never performed any aspect of the alleged agreement; instead, plaintiffs voluntarily infused Robot Printing with cash at their own peril. They were under no obligation to do so. The record "discloses merely that plaintiff did some things which were preliminary to the performance or execution of the contract, not that he did them in performance of the contract . . . . [T]he acts which plaintiff now attempts to assert were partial performance of the contract, were nothing more than activities preliminary to any performance or partial performance under the contract itself." *Cassidy v Kraft-Phenix Cheese Corp*, 285 Mich 426, 432-433; 280 NW 814 (1938). Because plaintiffs can cite no provision of the "agreement" that they performed, their claim of partial performance must fail.

---

[3] The doctrine of partial performance applies primarily in actions involving land. *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 540; 473 NW2d 652 (1991).

IV. PLAINTIFFS' FRAUD CLAIM AGAINST ZARB

Although the trial court did not address the issue, plaintiffs argue that they properly alleged a fraud claim. Plaintiffs argue that: (1) Zarb made fraudulent misrepresentations that he had the present ability to sell Robot Printing's assets, (2) the statements were made in bad faith, (3) Zarb knew they were false and intended that plaintiffs rely on the statements, and (4) plaintiffs did, in fact, rely on the statements and advanced money to Robot Printing to their detriment. We disagree.

There are three interrelated fraud doctrines: (1) fraudulent misrepresentation, (2) innocent misrepresentation, and (3) silent fraud. *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). Plaintiffs allege that, separate and apart from the parties' written and oral agreements, Zarb's fraudulent claims caused them to continuously infuse Robot Printing with operating funds.

> Common-law fraud or fraudulent misrepresentation entails a defendant making a false representation of material fact with the intention that the plaintiff would rely on it, the defendant either knowing at the time that the representation was false or making it with reckless disregard for its accuracy, and the plaintiff actually relying on the representation and suffering damage as a result. Silent fraud is essentially the same except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation. Such a duty may arise by law or by equity; an example of the latter is a buyer making a direct inquiry or expressing a particularized concern. A misleadingly incomplete response to an inquiry can constitute silent fraud. A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.

> Silent fraud and negligent misrepresentation both require a defendant to owe a duty to the plaintiff. Defendants rely on this Court's explanation in *McMullen v Joldersma*, 174 Mich App 207, 212; 435 NW2d 428 (1988), that Michigan jurisprudence had never imposed on sellers' agents a duty per se of disclosure to buyers, in contrast to the duty it has imposed on sellers themselves. However, a duty of disclosure may be imposed on a seller's agent to disclose newly acquired information that is recognized by the agent as rendering a prior affirmative statement untrue or misleading. This is especially true when the agent knows that the buyer has a particular concern with the subject matter of that statement. Indeed, a duty to disclose may arise solely because the buyers express a particularized concern or directly inquire of the seller . . . . [*Alfieri v Bertorelli*, 295 Mich App 189, 193-194; 813 NW2d 772 (2012) (quotation marks and citations omitted).]

Even though plaintiffs couch their claims in terms of "fraudulent misrepresentation," their real claim is for silent fraud. They do not argue that Zarb made affirmative statements regarding the Robocolor Process; instead, they argue that Zarb remained silent on the issue and failed to disclose that the patented process had been sold. In order to maintain an action for silent fraud, "the plaintiff must show that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure. A plaintiff cannot merely prove that the defendant failed to disclose something; instead, a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive." *Lucas v Awaad*, 299 Mich App 345, 363-364; 830 NW2d 141 (2013) (quotation marks and citations omitted). Thus, "[w]hile duty is irrelevant in a fraud claim, it is relevant in a silent fraud claim" and "in order for the suppression of information to constitute silent fraud there must exist a legal or

equitable duty of disclosure." *Id.* at 364 (quotation marks and citations omitted).

Plaintiffs' silent fraud claim must fail for two reasons: they cannot prove that Zarb owed them a duty to reveal the information nor can they demonstrate that Zarb's failure to disclose was calculated to defraud plaintiffs. Taking the deposition testimony in a light most favorable to plaintiffs, Zarb acknowledged that he was aware that the patented process was important to plaintiffs because plaintiffs believed that the process would generate substantial profits for Robot Printing. That the process was owned by an affiliate of Robot Printing did not keep Robot Printing from utilizing the technology and profiting from it. Additionally, as Zarb testified, the bank held an all-asset security interest in Robot Printing, including its intangibles. There is nothing in the record that would indicate that the bank discharged the collateral.

Additionally, plaintiffs cannot demonstrate that their "damages" were the result of the alleged fraud. Before they even met Zarb, plaintiffs had infused Robot Printing with over $150,000 in operating capital. Plaintiffs entered into a debt sale contract that required them to purchase accounts receivable that they could not subsequently finance. Their deposition testimony focused on the issue of accounts receivable and whether the bank properly applied Robot Printing's post-April 17 receivables to Robot Defined's operating capital. At no time during Anthony Barclae's or Peter Barclae's deposition do they take issue with "losing" the Robocolor Process. Thus, even if the patented process itself was owned by another company (which was affiliated with Robot Printing), there is no indication from the record that plaintiffs' decision to continuously fund Robot Printing had anything whatsoever to do with the al-

leged fraud. "In a fraud and misrepresentation action, the tortfeasor is liable for injuries resulting from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated." *Phinney v Perlmutter*, 222 Mich App 513, 532; 564 NW2d 532 (1997).

## V. THE MERGER CLAUSE

Plaintiffs argue that the merger clause in the parties' May 4, 2007, debt sale agreement was inapplicable to Zarb, who was not a party to the contract. Additionally plaintiffs argue that the merger clause was void because they were fraudulently induced into entering into the contract.

Paragraph 13 of the parties' May 4, 2007, debt sale agreement provided, in relevant part:

> This Agreement sets forth the entire agreement and understanding of the parties, and supersedes all prior agreements and understandings between the parties with respect to the assignment.

The May 4, 2007, agreement also provided:

> Assignee [Robot Defined] (i) has such knowledge and experience in financial matters that it is capable for evaluating the merits and risks of the purchase of the Notes and other Loan Documents; (ii) is knowledgeable regarding the financial status of Borrower, the Transferred Documents and all of Borrower's assets; (iii) has agreed to purchase the Notes and Assignor's interest in the Transferred Documents on the basis of its own independent investigation, evaluation and credit determination and has not sought or relied upon any representation or warranty from Assignor (except those representations expressly stated in Section 5 of this Agreement) or information provided by or statements made by Assignor or its representatives; and (iv) is

purchasing the Notes for Assignee's own account and not with a view to, or for sale in connection with, any public distribution which would violate applicable securities laws.

" 'Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous.' " *UAW-GM Human Resources Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998), quoting *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 580; 458 NW2d 659 (1990). When a contract contains "an explicit integration clause" parol evidence is inadmissible to determine whether the contract was integrated. *UAW-GM*, 228 Mich App at 494.

However, plaintiffs do not argue that there is a conflict over the terms of a valid contract; rather, plaintiffs argue that there is no legal contract because it was fraudulently obtained. " 'Fraud . . . makes a contract voidable at the instance of the innocent party' " and parol evidence may be admissible to demonstrate fraud. *Id.* at 503, quoting 3 Corbin, Contracts, § 580, p 431. Nevertheless, where there is a valid merger clause "only certain types of fraud would vitiate the contract." *Id.*

> [W]hile parol evidence is generally admissible to prove fraud, fraud that relates solely to an oral agreement that was nullified by a valid merger clause would have no effect on the validity of the contract. Thus, when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause. [*Id.*]

"Fraud in the procurement of the contract may be . . . grounds to retroactively avoid contractual obligations

through traditional legal and equitable remedies such as cancellation, rescission, or reformation . . . ." *Titan Ins*, 491 Mich at 557-558.

There is an important distinction between (a) representations of fact made by one party to another to induce that party to enter into a contract, and (b) collateral agreements or understandings between two parties that are not expressed in a written contract. It is only the latter that are eviscerated by a merger clause, even if such were the product of misrepresentation. It stretches the *UAW-GM* ruling too far to say that any pre-contractual factual misrepresentations made by a party to a contract are wiped away by simply including a merger clause in the final contract. Such a holding would provide protection for disreputable parties who knowingly submit false accountings, doctored credentials and/or already encumbered properties as security to unknowing parties as long as they were savvy enough to include a merger clause in their contracts. In fact, the *UAW-GM* court considered the effect of fraud allegations on a contract with a merger clause and determined that evidence was admissible to prove fraud that would "invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause. 3 Corbin, Contracts, § 578." [*UAW-GM*, 228 Mich App] at 503. Further, the section of *Corbin On Contracts* cited by *UAW-GM*, § 578, states that a merger clause "even though it is contained in a complete and accurate integration does not prevent proof of fraudulent misrepresentations by a party to the contract, or of illegality, accident or mistake." 6 Corbin, Contracts, § 578, p. 114 (reprinted as published in the 1960 edition of Volume 3). *Corbin* goes on to explain[:]

"Fraud in the inducement of assent . . . may make the contract voidable without . . . showing that the writing was not agreed on as a complete integration of its terms. In such case the offered testimony may not vary or contradict the terms of the writing, although it would be admissible even if it did so; it merely proves the existence of collateral factors that have a legal operation of their own, one that

prevents the written contract from having the full legal operation that it would otherwise have had. This is not varying or contradicting the written terms of agreement, although it does vary or nullify in part their legal effect." 3 Corbin, Contracts § 580, p. 142 (emphasis added).

In sum, the *UAW-GM* court did not bar a fraud claim in all cases in which the underlying contract has a merger clause, the court simply held that in that case the "plaintiff made no allegations of fraud that would invalidate the contract or the merger clause." *Id.* at 505. The question then is, when does fraud invalidate an entire contract, and when is it such that it provides no remedy or recourse if there is a written contract with a merger clause?

The Restatement 2nd of Contracts explains that if, "a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." REST. 2D CONTR. § 164. The answer to the question posed is, therefore, fraud will invalidate a contract when a party's assent to said contract is induced through *justified* reliance upon a fraudulent misrepresentation. A merger clause can render reliance unjustified as to agreements, promises or understandings related to performances that are not included in the written agreement. [*Star Ins Co v United Commercial Ins Agency, Inc*, 392 F Supp 2d 927, 928-929 (ED Mich, 2005) (some emphasis omitted).]

Plaintiffs allege that, although Zarb realized that they were particularly interested in the Robocolor Process, Zarb failed to inform plaintiffs that the process had been sold. They argue that the debt sale agreement itself was voidable at their discretion because of Zarb's misrepresentations regarding Robot Printing's assets. Because plaintiffs do not seek to add to or vary the terms of the May 4 contract, parol evidence may be introduced · to show that plaintiffs were fraudulently induced into signing the agreement. However, as previously discussed, plaintiffs' claim will still fail. Thus,

while it appears that the merger clause may not stand as a bar to plaintiffs' claim, plaintiffs' claim fails for other reasons.

### VI. DO ANTHONY BARCLAE AND CYNBA HAVE STANDING TO BRING THEIR CLAIM?

Although not addressed by the trial court, plaintiffs argue that, contrary to Zarb's assertions, their claim was not merely derivative of Robot Defined's claim.

"To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected." *Dep't of Treasury v Comerica Bank*, 201 Mich App 318, 329–330; 506 NW2d 283 (1993). A plaintiff must have "a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . . ." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). "A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Fieger v Comm'r of Ins*, 174 Mich App 467, 471; 437 NW2d 271 (1988).

> MCR 2.201(B) requires that, generally, an action must be prosecuted in the name of the real party in interest. A real party in interest is the one who is vested with the right of action on a given claim, although the beneficial interest may be in another. This standing doctrine recognizes that litigation should be begun only by a party having an interest that will assure sincere and vigorous advocacy. In addition, the doctrine protects a defendant from multiple lawsuits for the same cause of action. A defendant is not harmed provided the final judgment is a full, final, and conclusive adjudication of the rights in controversy that may be pleaded to bar any further suit instituted by any other party. [*City of Kalamazoo v Richland Twp*, 221 Mich App 531, 534; 562 NW2d 237 (1997) (citations omitted).]

In cases involving corporations, the "doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 474; 666 NW2d 271 (2003).

Here, plaintiffs pleaded fraudulent misrepresentation against Zarb on the basis of Zarb's failure to inform them that Robot Printing no longer owned the Robocolor Process. As a result of the alleged duplicity, both Anthony Barclae and CYNBA claimed that they loaned money to and infused Robot Printing with operating capital; the allegations indicated a fraud directed at Barclae and CYNBA. The claim is not simply derivative because the alleged wrong was a breach of duty owed personally to these plaintiffs. Although plaintiffs' claims must fail for the reason previously stated, they had standing to bring this cause of action.

### VII. DID THE TRIAL COURT ERR BY DISMISSING ALL OF ROBOT DEFINED'S CLAIMS AGAINST COMERICA?

#### A. $500,000 DEPOSIT AS LIQUIDATED DAMAGES

Robot Defined argues that the trial court erred by dismissing its claim against Comerica regarding the return of its $500,000 deposit.

The May 4, 2007, debt sale agreement included the following provision:

> 5. The Purchase Price is payable as follows:
>
> (a) A non-refundable Deposit of $500,000 payable as follows: (i) $250,000 in cash (which Assignor has received); and (ii) a $250,000 promissory note in favor of Assignor, in the form attached, executed by Penske Corporation and delivered to Assignor. The Deposit is non-refundable unless

Assignor refuses to close. If Assignee breaches this Agreement, Assignor may retain the Deposit as liquidated damages.

When interpreting a contract, a court's obligation is to determine the intent of the contracting parties. *Woodbury v Res-Care Premier, Inc*, 295 Mich App 232, 244; 814 NW2d 308 (2012). If the language of the contract is unambiguous, the court must construe and enforce the contract as written. *Id.*

"A contractual provision for liquidated damages is nothing more than an agreement by the parties fixing the amount of damages in the case of a breach of that contract." *Papo v Aglo Restaurants of San Jose, Inc*, 149 Mich App 285, 294; 386 NW2d 177 (1986).

It is a well-settled rule in this State that the parties to a contract can agree and stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement. Such a stipulation is enforceable, particularly where the damages which would result from a breach are uncertain and difficult to ascertain at [the] time [the] contract is executed. If the amount stipulated is reasonable with relation to the possible injury suffered, the courts will sustain such a stipulation. [*Moore v St Clair Co*, 120 Mich App 335, 340; 328 NW2d 47 (1982) (quotation marks and citation omitted).]

The validity of a liquidated damages clause depends on the conditions existing when the contract was signed rather than at the time of the breach. *EF Solomon v Dep't of State Hwys & Transp*, 131 Mich App 479, 484; 345 NW2d 717 (1984).

Here, the parties agreed that, if Robot Defined failed to comply with the agreement, it would essentially forfeit the $500,000 deposit and the bank could retain the deposit as liquidated damages. Robot Defined ar-

gues that the "election of remedies" doctrine barred the bank from asserting a claim against it for indemnification.

The election of remedies doctrine is a "procedural rule which precludes one to whom there are available two inconsistent remedies from pursuing both." *Riverview Coop, Inc v First Nat'l Bank & Trust Co of Mich*, 417 Mich 307, 311; 337 NW2d 225 (1983). The purpose of the doctrine "is not to prevent recourse to alternate remedies, but to prevent double redress for a single injury." *Id.* at 312. "In order for the doctrine to apply, three prerequisites must exist: (1) at the time of the election, there must have been two or more remedies available; (2) the alternative remedies must be inconsistent rather than consistent and cumulative; and (3) the party must have chosen and pursued one remedy to the exclusion of the other(s)." *Prod Finishing Corp v Shields*, 158 Mich App 479, 494; 405 NW2d 171 (1987). A plaintiff may, however, simultaneously pursue all available remedies regardless of their legal consistency, if the plaintiff does not obtain a double recovery. *Jim-Bob, Inc v Mehling*, 178 Mich App 71, 92; 443 NW2d 451 (1989).

> "For one proceeding to be a bar to another for inconsistency, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other. Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other. In this sense, inconsistency may arise either because one remedy must allege as fact what the other denies, or because the theory of one must necessarily be repugnant to the other. More particularly, where the election of a remedy assumes the existence of a particular status or relation of the party to the subject matter of litigation, another remedy is inconsistent if, in order to seek it, the party must assume a different and

inconsistent status or relation to the subject matter." [*Prod Finishing Corp*, 158 Mich App at 494-495, quoting 25 Am Jur 2d, Election of Remedies, § 11, pp 653–654.]

Robot Defined does not take issue with the liquidated damages provision; it only argues that by retaining the deposit, the bank is foreclosed from seeking further damages. However, as the bank points out, Robot Defined does not have a cause of action in this regard. Robot Defined's "claim" is really a defense to a breach of contract action. Thus, the liquidated damages provision and the bank's failure to tender back the deposit serves Robot Defined as an affirmative defense to a breach of contract action by the bank. Given the permissive language in the provision, Robot Defined might well succeed on such a defense. However, because there was no "cause of action," the trial court did not err by dismissing the count.

### B. BREACH OF CONTRACT WITH REGARD TO RECEIVABLES

Robot Defined next argues that the trial court erred by dismissing its breach of contract counterclaim, arguing that the statute of frauds did not apply because the agreement relating to the accounts receivable was in a written instrument.

The written instrument to which Robot Defined refers was not the parties' May 4, 2007, debt sale agreement; it was the May 4, 2007 forbearance agreement, which provided:

Borrowers [Robot Printing and its guarantors] acknowledge and agree they shall hold in express trust for Bank and immediately surrender to Bank in the form received all of their cash inflows by depositing such inflows into account ____ maintained at Bank. Proceeds of Accounts generated on or prior to April 16, 2007 shall be applied to reduce permanently the Liabilities. *Provided there is no*

*default under this Agreement and no default under the Debt Sale Agreement* (defined below), Bank agrees to deposit promptly to Printing's operating account maintained at Bank all proceeds of Accounts generated by Printing after April 16, 2007 and Borrowers may use the proceeds of such Accounts for working capital. In the event customers of Printing owe Accounts generated both prior to and after April 16, 2007, collections from those customers shall be applied first to the pre-April 16, 2007 Accounts (and applied by Bank to the Liabilities), unless there is a bona fide and fully documented dispute raised by such customer as to the validity of the pre-April 16, 2007 Account, in which case the payment shall be considered on account of post-April 16, 2007 Accounts. . . . At the request of Buyer (defined below) and Borrowers, Bank agrees to subordinate its lien on the post-April 16, 2007 Accounts to a new lender, including [CYNBA] International, Inc., an affiliate of Buyer. [Emphasis added.]

As Comerica points out, the foregoing provision has no application because Robot Defined failed to consummate the debt sale agreement. Thus, Comerica was under no obligation to share the receivables with Robot Defined.

### C. CONVERSION, FRAUD, AND UNJUST ENRICHMENT

As discussed above, Robot Defined's claims for conversion, fraud, and unjust enrichment must fail because Robot Defined seeks to enforce an oral agreement and the statute of frauds precludes such claims.

Affirmed.

BORRELLO, P.J., and K. F. KELLY and GLEICHER, JJ., concurred.