**GAIA TECHNOLOGIES, INC.,**
Plaintiff–Appellee,

v.

**RECONVERSION TECHNOLOGIES, INC., Reconversion Technologies of Texas, Inc., Progressive Capital Corporation, Defendants–Appellants,**

and

**David Gordon, Ira Rimer, Joel Holt and Richard Clark, Defendants–Appellants.**

Nos. 95–1345, 95–1346 and 95–1347.

United States Court of Appeals, Federal Circuit.

Aug. 19, 1996.

Guy E. Matthews, J. Albert Riddle, and William P. Jensen, Matthews and Associates, L.L.P., Houston, Texas, argued for plaintiff-appellee. Of counsel was Perry McConnell, R. Perry McConnell, P.C., Houston, Texas.

R. Thomas Seymour, Tulsa, Oklahoma, argued for defendants-appellants, David Gordon, Ira Rimer, Joel Holt and Richard Clark. With him on the brief was C. Robert Burton, IV.

Michael A. Maness, Houston, Texas, for defendants-appellants Reconversion Technologies, Inc., Reconversion Technologies of Texas, Inc., and Progressive Capital Corporation. On the brief was George D. Gordon, Baggett & Gordon, Conroe, Texas.

Before MICHEL, CLEVENGER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

Reconversion Technologies, Inc. (Retech), Reconversion Technologies of Texas, Inc. (Retex), and Progressive Capital Corporation (PCC) (collectively the Corporate Defendants) and David Gordon, Ira Rimer, Joel Holt, and Richard Clark (collectively the Individual Defendants) appeal the judgment of the United States District Court for the Southern District of Texas, *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, Civil Action No. H–94–2256 (S.D.Tex. March 17, 1995). This judgment, entered on jury verdicts, held the Corporate Defendants and the Individual Defendants liable to Gaia Technologies, Inc. (Gaia) for various patent, trademark, and state law claims. Because we reverse the district court's determination that Gaia had standing to bring an infringement action for four patents and one trademark, we vacate the judgment insofar as it relates to the patent and trademark claims. Because the district court may or may not elect to assert jurisdiction over the state law claims under 28 U.S.C. § 1367(a) (1994), we vacate the judgement on the state law claims and remand the case for dismissal of the patent and trademark claims and consideration of the state claims under 28 U.S.C. § 1367(a).

I

On October 20, 1993, Gaia filed a complaint in the United States District Court for the Southern District of Texas against the Corporate Defendants and the Individual Defendants. At trial, Gaia litigated the following federal issues which were submitted to a jury: (1) infringement under 35 U.S.C. § 271 (1994) of U.S. Patent Nos. 4,003,408 (the '408 patent), 4,028,288 (the '288 patent), 4,168,799 (the '799 patent), and 4,191,522 (the '522 patent);[1] and (2) infringement under 15 U.S.C.

---

1. The patents are entitled, respectively, an "un-    derground irrigation porous pipe," "moldable

§ 1114 (1994) of the trademark LEAKY PIPE, Reg. No. 1,703,285. As to the patent counts, Gaia alleged that the Corporate Defendants committed direct infringement and the Individual Defendants induced this infringement. Pursuant to the supplemental jurisdiction granted to federal district courts under 28 U.S.C. § 1367(a), Gaia also litigated the following Texas state law claims which were submitted to the jury: (1) unfair competition; (2) tortious interference with prospective contractual relations; and (3) wrongful appropriation of trade secrets.

Among other defenses, each group of defendants alleged that Gaia did not own the patents and trademark at the time the suit was filed, and thus lacked standing to assert the patent and trademark infringement claims. The district court submitted all of the above claims to the jury, reserving the issue of Gaia's standing to sue until after the jury verdict.

For the '408 and '799 patents, the jury found that the Corporate Defendants directly infringed and that damages of $123,750 should be assessed for each patent. Although the jury also found that the Individual Defendants induced infringement of the '408 and '799 patents, the jury found that no damages could be attributable to the Individual Defendants. In contrast, for the '522 patent, the jury found infringement and inducement of infringement against the Corporate Defendants and Individual Defendants, respectively, and assessed damages of $1.8 million. For the '288 patent, the jury found infringement by the Corporate Defendants and assessed damages of $1.8 million, but found no inducement of infringement by the Individual Defendants. For all four patents, the jury found no willfulness on the part of the Individual Defendants, Retech, and PCC, but found that Retex's infringement was willful. For the trademark infringement, the jury found that while the Individual Defendants did not infringe, the Corporate Defendants willfully infringed and assessed $125,000 in damages.

Regarding the state law claims, the jury found that the Corporate Defendants engaged in unfair competition and assessed damages at $125,000. Similarly, the jury found that the Corporate Defendants engaged in tortious interference with prospective contractual relations and assessed damages at $4,350,000. As to the wrongful appropriation of trade secrets claim, while the jury found that the Corporate Defendants had engaged in wrongful appropriation that caused damage, the jury answered "$0" to the question of the amount of damages. Additionally, the jury found that the Individual Defendants were not liable for each of the three state law claims. Nevertheless, in determining punitive damages "for the willful conduct of the defendants," the jury assessed $100,000 against each Individual Defendant and nothing against each Corporate Defendant.

After the verdict, the judge denied the defendants' motion to dismiss based on Gaia's lack of standing to bring the patent and trademark claims. The judge, in two other post-verdict orders, extensively modified the jury's findings. For the '799 and '408 patents, the judge modified the jury verdict so as to assign liability to the Individual Defendants for the damage that the jury found occurred because of their inducement of infringement, making the Individual Defendants jointly and severally liable with the Corporate Defendants for the $123,750 damage award for each patent.

Reversing an earlier post-verdict holding that voided the jury's punitive damages assessment, the judge also reinstated the punitive damages against the Individual Defendants. Reasoning that the jury could not have assessed punitive damages against the Individual Defendants without finding them liable on a state law claim, the judge found all defendants jointly and severally liable for $4,350,000 for both wrongful appropriation of trade secrets and tortious interference with prospective contractual relations. In addition, the judge found that the Corporate Defendants willfully and maliciously infring-

end products from primarily reclaimable waste materials," a "soaker hose," and an "extruding

machine and end products."

ed Gaia's patents and trademark and awarded double damages and attorney's fees (set at $450,000 in the final judgment). The judge then awarded Gaia costs, pre- and post-judgment interest, and issued a permanent injunction against the defendants. Finally, the judge entered a final judgment reflecting the amount of damages owed to Gaia.[2] The Corporate Defendants and Individual Defendants appealed to this court.

## II

■ On appeal, the Corporate Defendants renew their objection that Gaia lacked standing to bring the patent and trademark claims because Gaia did not own the four patents and one trademark (the Intellectual Property) at the time the suit was filed on October 20, 1993. The question of a party's standing to bring a case is a jurisdictional one which we review de novo. *See Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1551, 35 USPQ2d 1065, 1074 (Fed.Cir.) (in banc), *cert. denied,* —— U.S. ——, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995).

### A

■ Patents and trademarks, like other personal property, may be conveyed from the inventor (patent) or registrant (trademark) to others, *see FilmTec Corp. v. Allied–Signal, Inc.,* 939 F.2d 1568, 1572, 19 USPQ2d 1508, 1511 (Fed.Cir.1991), although a trademark cannot be validly assigned unless accompanied by its goodwill garnered in the marketplace, *see Marshak v. Green,* 746 F.2d 927, 929, 223 USPQ 1099, 1099–1100 (2d Cir. 1984). 35 U.S.C. § 261 (1994), the patent statute governing assignments, states:

Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing.... An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the

Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

For registered trademarks, 15 U.S.C. § 1060 (1994) similarly provides:

Assignments shall be by instruments in writing duly executed.... An assignment shall be void as against any subsequent purchaser for a valuable consideration without notice, unless it is recorded in the Patent and Trademark Office within three months after the date thereof or prior to such subsequent purchase.

Both statutes thus provide that: (1) a patent or trademark assignment must be in writing; and (2) the recording of an assignment is necessary only to protect the assignee from subsequent bona fide purchasers without notice.

### B

In order to adjudicate the Corporate Defendants' appeal on the standing issue, we must trace the chain of title of the Intellectual Property from its original owner and creator—James E. Turner, the sole inventor of the four patented inventions and the original registrant of the LEAKY PIPE trademark. If Gaia can prove that it was the assignee of the Intellectual Property at the time the suit was filed, Gaia has standing to sue for patent infringement under 35 U.S.C. § 281 (1994) as a patentee, *see* 35 U.S.C. § 100(d) (1994) (noting that "patentee" includes those who are successors in title to the patentee), and for trademark infringement under 15 U.S.C. § 1114 as a registrant, *see* 15 U.S.C. § 1127 (1994) (noting that "registrant" embraces the legal assigns of the registrant). Absent ownership of the Intellectual Property, Gaia lacked standing to sue on the patent and trademark infringement claims. *See Film-Tec Corp.,* 939 F.2d at 1571, 19 USPQ2d at 1510 ("If FilmTec lacks title to the patent, FilmTec has no standing to bring an infringement action...."); *DeCosta v. Viacom*

---

**2.** All parties agree that the judge made arithmetic errors in calculating the final judgment. We assume the errors will be corrected on remand, if a judgment supporting any damages is entered. In addition, the Individual Defendants argue that the district court erred as a matter of law when it

"ignore[d] the jury's specific fact finding[s]" and excessively "reformed" the verdict. Because the district court may or may not elect to assert jurisdiction in this case, we cannot reach this significant issue.

*Int'l, Inc.*, 981 F.2d 602, 605, 25 USPQ2d 1187, 1190 (1st Cir.1992), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993) ("To win a trademark case, a plaintiff must show ... that he uses, and thereby 'owns,' a mark....").

In 1976, Turner created the Entek Corporation (Entek) to invent and develop products using old tire scraps. Turner's efforts eventually matured into the four patents and one trademark registration at issue in this case. By 1990, Entek had apparently acquired legal title to the Intellectual Property from Turner through various transactions.[3] In 1990, Turner and Entek filed for bankruptcy in Dallas, Texas. In the course of these bankruptcy proceedings, Banstar Corporation (Banstar) duly entered into an agreement with Turner and Entek under which Banstar agreed to purchase the Intellectual Property. The bankruptcy court approved the sale on August 9, 1991, and the actual transfer of the Intellectual Property from Entek to Banstar occurred on August 19, 1991.

In its complaint filed on October 20, 1993, Gaia alleged that Recycled Products Corporation, formed by Turner, improperly obtained a portion of Entek's inventory and began selling products under the trademark LEAKY PIPE at about the same time Banstar legally acquired the Intellectual Property from Entek. Additionally, Gaia alleged that Gordon, the president of Retex, along with Turner, Clark, Rimer, and Holt operated Retex to manufacture infringing products under the trademark LEAKY PIPE. Subsequently, PCC, a group consisting of Gordon, Clark, Rimer, and Holt, arranged for a reverse merger of Retex, resulting in a new parent company Retech. To Gaia, this "fraud on the bankruptcy court" prompted its suit against the Corporate Defendants and Individual Defendants because these parties improperly obtained and used the Intellectual Property, which was allegedly legally owned by Gaia.

The problem for Gaia in this case, however, is not the conduct of the defendants, but Gaia's inability to prove that it was the owner of the Intellectual Property at the time the suit was filed. There are several pieces of evidence in the record before us that are relevant to determining whether ownership of the Intellectual Property passed from Banstar to Gaia. First, on August 4, 1991, a meeting of the shareholders of Banstar occurred. The relevant portion of the minutes of this meeting reads:

> Upon motion duly made, seconded and unanimously passed, the Shareholders voted to sell 100% of the outstanding stock of the Corporation to Gaia Technologies, Inc. This sale will include all assets and liabilities of the Corporation and any interest in the contracts dealing with the purchase of the assets of Entek Corporation or James Turner, an individual.

Additionally, the undated minutes of a meeting of the Banstar Board of Directors state in part:

> Upon motion duly made, seconded and unanimously passed, the Board adopted the unanimous resolution of the Shareholders to sell 100% of the stock of the Corporation to Gaia Technologies, Inc. for consideration.

Second, in August 1993, Banstar represented to the bankruptcy court handling the Turner–Entek matter that *it* presently held title to the patents in question.

Third, on November 8, 1993, nineteen days after Gaia filed suit, Banstar and Gaia entered into a non-exclusive cross-licensing agreement. Schedule A of this agreement lists the four patents at issue in this case as belonging to Banstar.

Fourth, on October 24, 1994, Gaia's attorney filed a recordation of assignment with the PTO attesting that the Intellectual Prop-

---

**3.** By providing copies of assignment records from the Patent and Trademark Office (PTO), the Corporate Defendants allege that Entek never received legal title to the '408 and '288 patents from Turner. Since we conclude that Gaia did not have legal title to the '408 and '288 patents and thus lacked standing to sue in this case, we need not reach this issue. Additionally, the mere fact that an assignment was recorded in the PTO does not, without more, prove that a valid assignment actually took place. *See* 37 C.F.R. § 3.54 (1995) ("The recording of a document ... is not a determination by the [PTO] of the validity of the document or the effect the document has on the title to an application, a patent, or a registration.").

erty was assigned, for consideration, from Banstar to Gaia and that "[t]he effective date of this Assignment is August 4, 1991." Despite this reference to an "effective date," the copy of the assignment filed with the PTO is undated.

### C

■ On appeal, Gaia argues that the minutes of the meeting of the Banstar Board of Directors constituted the assignment from Banstar to Gaia necessary to transfer legal title of the Intellectual Property to Gaia, thus conferring standing upon Gaia to sue. We reject this argument. Indeed, the evidence compels us to reach the opposite conclusion: that a proper assignment of the Intellectual Property from Banstar to Gaia never took place prior to the filing of the lawsuit on October 20, 1993.

The facts of this case are similar to *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 19 USPQ2d 1513 (Fed.Cir.1991). In *Arachnid*, IDEA and Arachnid entered into a 1980 agreement whereby IDEA was to provide consulting services to Arachnid. The agreement provided that any inventions conceived by IDEA would be the property of Arachnid and that all rights would be assigned by IDEA to Arachnid. After the agreement was terminated, several IDEA employees filed a patent application and assigned the application to IDEA. The application matured into a patent that accordingly issued to IDEA. On May 6, 1985, IDEA granted a non-exclusive license to Merit to practice the invention of the patent, and Merit sold devices covered by the patent during 1985 and 1986. Arachnid then sued Merit for infringement of the patent during that time period. *Id.* at 1576–77, 19 USPQ2d at 1514–15.

On appeal to this court, Merit argued that Arachnid was not the owner of the patent at issue and thus lacked standing to bring the patent infringement action. Arachnid contended that it held legal title to the patent based on the 1980 consulting agreement between IDEA and Arachnid. *Id.* at 1577–78, 19 USPQ2d at 1516. This court flatly rejected Arachnid's argument, stating:

the fact remains that the Arachnid/IDEA consulting agreement was an *agreement to assign,* not an assignment. Its provision that all rights to inventions developed during the consulting period "will be assigned" by IDEA to Arachnid does not rise to the level of a present assignment of an existing invention, effective to transfer all legal and equitable rights therein to Arachnid and extinguish any rights of IDEA.

*Id.* at 1580, 19 USPQ2d at 1518.

The only pieces of evidence presented by Gaia of a written assignment prior to the filing of its lawsuit are the minutes of the meetings of Banstar's shareholders and board of directors. Like the situation in *Arachnid*, these minutes, at most, are a memorialization of an agreement to sell all assets of Banstar to Gaia at some time in the future. Such an agreement to assign is not an assignment and thus did not vest legal title in Gaia of the Intellectual Property on August 4, 1991. Indeed, the record contains two writings (Banstar's August 1993 representation to the bankruptcy court and the November 1993 Banstar–Gaia cross-licensing agreement) which evidence that Banstar, and not Gaia, owned the Intellectual Property after the August 4, 1991 meeting, when the transfer of the Intellectual Property from Banstar to Gaia allegedly occurred.

■ The only possible saving grace for Gaia is the *nunc pro tunc* assignment of patent and trademark rights that was executed on October 24, 1994, but was made effective as of August 4, 1991, prior to Gaia's filing of the instant suit. At trial, Gaia's counsel characterized this assignment as follows:

The documents are simply a reflection of what the oral agreement was between Banstar and Gaia for a long time. Then we discovered there wasn't any recording of assignments in writing, so we executed, drafted the assignments and made them effective as of the date they were supposed to be effective.

This agreement is not sufficient to confer standing on Gaia retroactively. As the court in *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 38 USPQ2d 1678 (D.Del.1995), aptly stated:

As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day. *Id.* at 310, 917 F.Supp. 305, 38 USPQ2d at 1682; *see Quiedan Co. v. Central Valley Builders Supply Co.,* No. C 92–3532 BAC, 1993 WL 451503, at *2 (N.D.Cal. Oct. 28, 1993), *aff'd,* 31 F.3d 1178 (Fed.Cir.1994) (table); *Afros S.p.A. v. Krauss–Maffei Corp.,* 671 F.Supp. 1402, 1445–46, 5 USPQ2d 1145, 1181 (D.Del.1987), *aff'd,* 848 F.2d 1244 (Fed. Cir.1988) (table); *see also Minneapolis & St. Louis R.R. Co. v. Peoria & Pekin Union Ry. Co.,* 270 U.S. 580, 586, 46 S.Ct. 402, 404–05, 70 L.Ed. 743 (1926) ("The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought.").

At bottom, the relevant statutes require an assignment of patents and registered trademarks to be in writing. Gaia has failed to come forward with the requisite evidence necessary to establish that an assignment, in writing, of the Intellectual Property took place before the lawsuit was filed. Absent legal title of the Intellectual Property, Gaia lacked standing to bring the patent and registered trademark claims against the defendants.[4] Accordingly, we reverse the district court's denial of the defendants' motion to dismiss the patent and trademark infringement claims based on Gaia's lack of standing to bring these claims. We consequently vacate the district court's entry of judgment of infringement of the four patents and one registered trademark that was entered against the defendants. The district court is instructed to dismiss Gaia's patent and trademark infringement claims because of Gaia's lack of standing to bring those claims.

### III

We next turn to the disposition of the Texas state law claims of unfair competition, tortious interference with prospective contractual relations, and misappropriation of trade secrets. Although assertion of these claims alone cannot confer federal question subject matter jurisdiction upon the federal district courts under 28 U.S.C. § 1331 (1994), 28 U.S.C. § 1367(a) provides that a district court may exercise supplemental jurisdiction over such state claims if joined with related federal claims:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

■ As 28 U.S.C. § 1367(c) (1994) makes clear, however, the district court is not obligated to accept supplemental jurisdiction of such state law claims:

---

4. Because we so hold, we do not reach the Corporate Defendants' other objection to the Banstar–Gaia assignment, namely that the August 4, 1991 "assignment" could not transfer the Intellectual Property because the transaction assigning the Intellectual Property from Entek to Banstar was not approved by the bankruptcy court until August 9, 1991 and did not actually occur until August 19, 1991. Thus, the Corporate Defendants argue that there was nothing that Banstar could assign to Gaia on August 4, 1991, since Entek still owned the Intellectual Property as of that date. Similarly, we need not pass on the Corporate Defendant's argument that Gaia divested itself of standing to sue on the '288 and '522 patents by virtue of an exclusive licensing agreement between Gaia and Thor Ventures executed on December 13, 1993.

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Nevertheless, § 1367(c)(3) states that dismissal of all federal claims in a case does not require the district court to summarily dismiss the state claims as well. Indeed, the district court may retain state claims eligible for supplemental jurisdiction if all the federal claims are dismissed. *See Baker v. Farmers Elec. Coop., Inc.,* 34 F.3d 274, 283 (5th Cir. 1994).

In this case, based on its ruling that Gaia had standing to bring its patent and trademark infringement claims, the district court did not question the propriety of exercising supplemental jurisdiction under § 1367(a) over Gaia's state law claims. Our reversal of the district court's standing ruling and our subsequent vacating of the judgment on those claims, however, may materially alter the assumptions made by the district court in deciding to adjudicate the state law claims. Because § 1367(a) places the decision whether to retain jurisdiction over eligible state law claims in the sound discretion of the district court, we vacate the judgment against all defendants on the state law claims and remand those claims to the district court for it to determine whether to retain § 1367(a) supplemental jurisdiction over the state law claims in light of our action on the federal claims.

## IV

In summary, this court: (1) reverses the district court's denial of the defendants' motion to dismiss the patent and trademark claims based on Gaia's lack of standing to bring such claims; (2) vacates the judgment of the patent and trademark infringement claims entered against the defendants and instructs the district court to dismiss these claims; (3) vacates the judgment of the state law claims against all defendants; and (4) remands the case so that the district court, following the guidelines set forth in 28 U.S.C. § 1367(c), may determine whether to retain supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state law claims.

*REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED.*