# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 29, 2020

No. 18-51021

Lyle W. Cayce
Clerk

NEUTRON DEPOT, L.L.C.,

Plaintiff-Appellant

v.

BANKRATE, INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
1:16-CV-1170

Before HIGGINBOTHAM, JONES, and DUNCAN, Circuit Judges.

PER CURIAM:*

In this trademark case, the district court dismissed Neutron Depot's infringement claims, among other reasons, for lack of statutory standing under §§ 32(1) and 43(c) of the Lanham Act. We affirm.

I.

In 1994, CSi Agency Services, Inc., registered the term "insurance depot" as a trademark. In 2013, CSi gave plaintiff-appellant Neutron Depot a license

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-51021

to use the mark to promote its insurance business. CSi's president and owner, James Maxwell, is also Neutron Depot's manager.[1]

From 2010 through 2014, a division of defendant-appellee Bankrate, Inc. used "insurance depot" as one keyword in online advertisements to drive traffic to websites designed to collect users' contact information and sell it to insurers. Most keywords were generated by computer algorithm. The "insurance depot" keyword was responsible for generating seventy-three leads out of a total of almost 7.6 million leads.

In May 2014, Neutron Depot sued Bankrate under various sections of the Lanham Act for infringing the mark.[2] As Neutron Depot admitted below, Bankrate immediately stopped using the mark and has not resumed using it. In December 2015, Bankrate sold off the division that administered the relevant program.

In 2016, Bankrate moved for judgment on the pleadings on the basis that the 2013 licensing agreement did not give Neutron Depot statutory standing to litigate its infringement claims. The motion was dismissed without prejudice as the case was transferred to another district court. On December 27, 2016, CSi assigned the mark to Neutron Depot, and on January 3, 2017, Neutron Depot filed a third amended complaint to reflect this assignment. The 2016 assignment transferred "ownership" of the mark without qualification. Its effective date was December 28, 2016, and it was executed by Maxwell for both CSi and Neutron Depot.

Bankrate again moved to dismiss for lack of statutory standing. The district court granted the motion as to Neutron Depot's claims under §§ 32(1)

---

[1] Neither CSi nor Maxwell is a party to this lawsuit.

[2] Neutron Depot also brought other federal and state-law claims not relevant to this appeal.

No. 18-51021

and 43(c) of the Lanham Act, but not as to its false-designation claims under § 43(a)(1)(A). Additionally, the district court dismissed the §§ 32(1) and 43(c) claims with prejudice, citing "ample evidence" of Neutron Depot's "bad faith" in litigation. In particular, despite "repeatedly" recognizing that CSi could join the case, Neutron Depot never sought to join CSi but instead "attempt[ed] to create standing through assignment of the Mark to Neutron Depot."

Bankrate then moved for partial summary judgment as to damages arising from Neutron Depot's § 43(a)(1)(A) claim. The district court granted the motion, holding Neutron Depot was not entitled to profit disgorgement, unjust enrichment, an injunction, or punitive damages. Deprived of all non-nominal damages, Neutron Depot amended its complaint to omit its remaining claims and to dismiss without prejudice its claims against two other defendants. The district court entered judgment on November 14, 2018. Neutron Depot timely appealed.

## II.

We review summary judgments *de novo*, applying the same standards as the district court. *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010). We also review dismissals for lack of statutory standing *de novo*. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795–96 (5th Cir. 2011) (citation omitted). Finally, we review the district court's decision to dismiss with or without prejudice for abuse of discretion. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 215 n.34 (5th Cir. 2009) (citation omitted).

## III.

## A.

Neutron Depot first argues that the district court erred in dismissing its §§ 32(1) and 43(c) claims for lack of statutory standing. It contends the district court erroneously applied a jurisdictional "time-of-filing" rule in the non-jurisdictional statutory-standing context. Bankrate counters by arguing that a

3

No. 18-51021

Lanham Act claimant cannot cure a standing defect after litigation begins. It cites two Federal Circuit cases that hold patent assignees cannot cure statutory-standing defects through mid-litigation patent assignments. *See Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384–85 (Fed. Cir. 2015); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779–80 (Fed. Cir. 1996).

A claimant has "statutory standing" if its claim "fall[s] within the zone of interests protected by" the statute. *Allen v. Wright*, 468 U.S. 737, 751 (1984). Sections 43(c) and 32(1) of the Lanham Act define their own zones of interests by providing who, precisely, can bring a cause of action. *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 (5th Cir. 2003) (as to § 43(c)); *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013) (as to § 32(1)). Statutory standing "does not implicate subject-matter jurisdiction." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.4 (2014) (citation omitted)).

Under both §§ 32(1) and 43(c), a claimant must own the mark outright to have statutory standing. *See* 15 U.S.C. § 1114(1) (§ 32(1) enforceable through "a civil action by the registrant"); *id.* § 1125(c)(1) (§ 43(c) cause of action extends to "the owner of a famous mark"). Mere exclusive licensees lack standing to bring these claims. *ICEE*, 325 F.3d at 599 ("Because [the claimant] is not the owner of the marks, but merely an exclusive licensee, it has no standing to sue under [§ 1125(c)]."); *SPI*, 726 F.3d at 75 (successful assignment under § 1114(1) requires "an outright sale of *all rights* in [the] mark" (quoting 3 McCarthy on Trademarks & Unfair Competition § 18:1 (4th ed. 2012) (emphasis in original)). Only an original owner or a true assignee—one who has acquired not only the right to use the mark but real *title* to the mark, excluding all others, even such that "the assignee [may] hold the registered trademark *owner* liable under trademark law"—has standing under § 43(c).

4

No. 18-51021

*ICEE*, 325 F.3d at 598 (emphasis added); *accord SPI*, 726 F.3d at 78 (licensee lacks standing unless "its 'license' amounts, in fact, to an assignment" (citing 3 McCarthy § 18:5)).

Here, Neutron Depot concedes it was merely "an exclusive licensee of the mark" when it brought its infringement claim in 2014. It "became the owner of the mark" only via the 2016 assignment, two years after litigation began.[3] Therefore, the only way Neutron Depot could have statutory standing is through the mid-litigation 2016 assignment. But if the time-of-filing rule—as espoused in the Federal Circuit's *Gaia* and *Alps* decisions—applies, the 2016 assignment was insufficient to solve Neutron Depot's statutory-standing problem.

We need not decide, however, whether to import the time-of-filing rule into the Lanham Act context.[4] Even assuming (contrary to *Gaia* and *Alps*) that the time-of-filing rule does not apply here, Neutron Depot has a deeper problem. The 2016 assignment was not retroactive; it was "effective on December 28, 2016," the day after the assignment. But it is undisputed that Bankrate's infringement stopped in 2014, well before the 2016 assignment. This means even assuming the effectiveness of the 2016 assignment, Neutron Depot did not own the mark at any point when the infringement took place.[5]

---

[3] This is clear on the face of the third amended complaint, without reference to the actual texts of the 2013 licensing agreement or the 2016 assignment. We therefore need not reach Neutron Depot's argument that the district court erred by relying on the 2013 licensing agreement, which was not attached to the third amended complaint.

[4] We note, however, that *Gaia* did apply its holding to an accompanying trademark-infringement claim, 93 F.3d at 780, and that an authoritative trademark treatise has cited *Gaia* for the proposition that "[i]f plaintiff is not the owner of the mark at the time suit was filed, that defect cannot be cured by a later assignment." 6 McCarthy § 32:3 (5th ed. 2019).

[5] Indeed, for most of the time of Bankrate's infringement (2010 through 2014), Neutron Depot had *no* rights in the mark. The third amended complaint states that from 2008 until mid-2013, the mark was licensed to another entity, DepoWeb, and that not until August 23, 2013, was the mark licensed to Neutron Depot at all.

No. 18-51021

On the other hand, the mid-litigation assignments in *Alps* and *Gaia* were made retroactive to dates of previous, ineffective assignments that had taken place before or during the alleged infringement. *See Alps*, 787 F.3d at 1381 (assignment made retroactive to date of previous, non-exclusive license); *Gaia*, 93 F.3d at 778, 779 (assignment made retroactive to date of previous, ineffective agreement). Here, had the 2016 assignment been retroactive to a point before Bankrate stopped infringing in 2014, there would have been some overlap between Bankrate's infringement and Neutron Depot's rights in the mark. But its effective date is after all infringement ceased. Thus, even if the mid-litigation assignment was effective to cure statutory standing (something we need not decide here), the purely prospective 2016 assignment would have no impact on Neutron Depot's ability to bring its infringement claims, at least as to Bankrate's infringement.

We therefore affirm the dismissal of Neutron Depot's claims under §§ 32(1) and 43(c).

## B.

Neutron Depot next argues the district court erred in finding it unentitled to profit disgorgement for its false-designation claim under § 43(a)(1)(A). Neutron Depot claims deposition testimony from Bankrate's corporate representative, Matthew Rihtar, creates a genuine issue of material fact as to whether Bankrate's infringement was willful. Rihtar testified it was Bankrate's policy to remove search terms upon being notified that such terms were trademarked. From this, Neutron Depot argues that "it was Bankrate's general policy to voluntarily and intentionally use (*i.e.*, infringe upon) others' trademarks" and that a reasonable jury could thus find willful infringement.

To determine the availability of profit disgorgement under the Lanham Act, we look to six factors, sometimes called the *Pebble Beach* factors. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002) (citing, *inter*

*alia, Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 555 (5th Cir. 1998)).[6] Neutron Depot advances an argument only as to the first factor, Bankrate's "intent to confuse or deceive." *Id.* at 349 (citation omitted). While we have "declined to adopt a bright-line rule in which a showing of willful infringement is a prerequisite to an accounting of profits," such a showing is "an important factor." *Id.* (cleaned up). An infringement is "willful[]" if done "voluntarily and intentionally and with the specific intent to cause the likelihood of consumer confusion." *Id.* at 349 n.9. We regularly reverse juries' profit-disgorgement awards for lack of evidence of willfulness. *See, e.g., Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 461–63 (5th Cir. 2017); *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.* [*TPS*], 951 F.2d 684, 694–96 (5th Cir. 1992).

Here, like the district court, we find no evidence creating a jury question on whether Bankrate willfully infringed the mark. Indeed, no evidence suggests Bankrate even knew of CSi or Neutron Depot or was aware of the mark's registration when it infringed the mark. *Cf. Streamline*, 851 F.3d at 463 (citing *TPS*, 951 F.2d at 695). At most, Rihtar's testimony shows Bankrate intended to use the trademarked phrase but does not speak to any "specific intent to cause" confusion or to deceive, as willfulness requires. *Quick Techs.*, 313 F.3d at 349 n.9.

We therefore affirm summary judgment dismissing Neutron Depot's § 43(a)(1)(A) claim.

---

[6] The factors are:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Id.* (quoting *Pebble Beach*, 155 F.3d at 555).

No. 18-51021

C.

Finally, Neutron Depot argues the district court abused its discretion in dismissing its claims with prejudice. We disagree.

We review such decisions for abuse of discretion "[b]ecause the district court is best situated to determine when plaintiffs have had sufficient opportunity to state their best case." *Club Retro*, 568 F.3d at 215 n.34 (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). And, while leave to amend "is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Schiller*, 342 F.3d at 566 (citation omitted). This matter has been pending for over five years, and Neutron Depot's statutory-standing problem was first identified over three years ago. Moreover, the district court allowed Neutron Depot to file three amended complaints. It was not an abuse of discretion for the district court to refuse Neutron Depot a "four[th] bite[] at the apple." *Id.*; *see Price v. Pinnacle Brands*, 138 F.3d 602, 607–08 (5th Cir. 1998) (dismissal with prejudice appropriate when plaintiffs had "had three opportunities to articulate" claims).

AFFIRMED