*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIFFANY SHANTEL ROBINSON,

       Plaintiff-Appellee,

v

JANET ELAINE SZCZOTKA, and THE ASU
GROUP-ASU RISK MANAGEMENT,

       Defendants,

and

SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION, also known as
SMART.

       Defendant-Appellant.

UNPUBLISHED
April 6, 2023

No. 359646
Wayne Circuit Court
LC No. 20-012733-NI

Before:  K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

PER CURIAM.

Defendant-appellant, Suburban Mobility Authority for Regional Transportation (SMART), appeals by leave granted[1] the November 29, 2021 order granting in part and denying in part SMART's motion for partial summary disposition.  In partially granting the motion, the court held that plaintiff, Tiffany Shantel Robinson, had the right to pursue personal insurance protection (PIP) benefits from SMART even though plaintiff had previously assigned her claims to several medical providers because (1) SMART had no standing to enforce those assignments between plaintiff and her medical providers, and (2) plaintiff and her medical providers executed valid revocations of

---

[1] *Robinson v Szczotka*, unpublished order of the Court of Appeals, entered April 7, 2022 (Docket No. 359646).

-1-

those assignments, thereby returning the right to pursue those PIP benefits to plaintiff. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff was injured in an automobile accident and subsequently accrued medical bills related to her resulting injuries from Northland Radiology, Quest Physical Therapy, Aligned Chiropractic, Dependable Transportation, Michigan Business Management, and Garden City Hospital. Before plaintiff initiated this litigation, she assigned her rights to recover PIP benefits to several of her medical providers, including Northland Radiology, Quest Physical Therapy, Dependable Transportation, Aligned Chiropractic, and Elite Diagnostics.

Thereafter, on September 28, 2020, plaintiff filed a complaint to collect first-party no-fault PIP benefits, underinsured motorist benefits, and uninsured motorist benefits from both SMART and defendant ASU Risk Management. Two months later, the parties stipulated to the dismissal of ASU Risk Management as well as the claims for underinsured and uninsured motorist benefits, leaving at issue only plaintiff's claim for PIP benefits against SMART.

SMART eventually moved for partial summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10), arguing that plaintiff had no standing to pursue a cause of action to recover claims that she had already assigned to her medical providers. SMART noted that one of plaintiff's medical providers, the Michigan Institute of Pain and Headache, PC, had already filed its own lawsuit to collect on its bills related to plaintiff's accident based on its assignment of benefits from plaintiff, and that the other medical providers were also free to do so.

In responding, plaintiff did not contest the factual or legal premises of SMART's motion but instead asserted that *after* she filed her complaint, she and a number of her medical providers executed "Mutual Revocation[s] of Assignment(s)." Plaintiff alleged that these contracts "revoked, rescinded, and nullified" the assignments *nunc pro tunc*, or retroactively, such that plaintiff recovered her rights to PIP benefits dating back to when she assigned them to her medical providers.[2] These assignments, plaintiff argued, should be considered to have never existed, and the medical providers waived any independent causes of action. Plaintiff acknowledged that her medical providers had failed to bring their claims to recover medical bills in a timely manner pursuant to the one-year-back rule, see MCL 500.3145(1), and stated that the only fair avenue for recovery of those medical bills was to revoke her assignments retroactively and litigate her own timely filed claims.

SMART reply made several points. First, it argued that it had standing to challenge the effect of the assignments because it had a real interest in claims that the medical providers might

---

[2] Each of the revocations, dated September 20, 2020, contained the following language:

The assignments are revoked nunc pro tunc the date the assignment(s) was/were entered into and should be considered as if it/they never existed and that both [parties of this revocation] wish to revoke and rescind any and all Assignment of Rights as if it never existed by the execution of this agreement.

bring against it. Second, while admitting that it was not challenging the validity of the assignments, SMART argued that a valid assignment is one manifesting a present intent to transfer, where the assignor does not retain any power of revocation. Third, SMART asserted that when plaintiff filed her complaint, she had already executed assignments to her medical providers, and thus those claims belonged to those medical providers, who therefore bore responsibility for pursuing their claims in a timely manner pursuant to the one-year-back rule, MCL 500.3145(1). Because those medical providers failed to pursue their claims in a timely manner, their right to sue for PIP benefits was extinguished by operation of the one-year-back rule. To this point, SMART argued that these medical providers' claims were extinguished before the revocations were executed on September 20, 2020, and so there remained no claims to "give back" to plaintiff through the revocations. Essentially SMART asserted that once plaintiff's medical providers' claims had expired, the parties could properly not thereafter work around the one-year-back rule and effectively restore their expired rights by operating as though the assignments had never existed.

As noted, the trial court granted SMART's motion in part, concluding that plaintiff could not properly claim compensation for the medical bills of Michigan Institute of Pain and Headache (d/b/a Metro Pain Clinic), because that medical provider filed its own suit in district court. Relative to the other providers, the court ultimately held that SMART did not have the authority to enforce plaintiff's assignments with her providers and that those parties to the assignments could, and did, revoke those contracts:

> But in the end, I do believe that the contract is between [plaintiff] and the providers. And if they decide to revoke it, the Plaintiff can always get it.

> Now, as I said earlier, the insurance company, or in this case, SMART and/or Allstate, they're only going to have to pay once, if any. They don't have to pay twice 'cause two different entities are going after these bills.

> But a lot of times, I mean, I can see today where you're going to have a Plaintiff going after the bills and a provider. And they're going to duke it out at trial.

> And it could get confusing, I don't know. It's never happened before, but I think theoretically, it could happen. They can both go after the bills. But I would instruct the jury you only got to pay once, if you have to pay at all or something like that.

> So for those reasons, I think that I respectfully disagree with [defendant's] position, . . . but it was an interesting argument. And I will respectfully deny summary at this time.

## II. ANALYSIS

The dispositive question on appeal is whether the revocation of the assignments allowed plaintiff to maintain her PIP claim that was filed prior to the revocation. This involves determining the meaning and effect of the assignments and revocations of those assignments, as well as the impact of those on plaintiff's ability to bring this claim.

## A. STANDARDS OF REVIEW

"Construction and interpretation of a contract are questions of law that we review de novo, meaning that we do so without deference to the trial court's decision." *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 12; 824 NW2d 202 (2012), citing *Comerica Bank v Cohen*, 291 Mich App 40, 46; 805 NW2d 544 (2010). In *Meagher v Wayne State Univ*, 222 Mich App 700, 721-722; 565 NW2d 401 (1997), we explained:

> Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning. [Citations omitted.]

This Court also reviews de novo a motion for summary disposition. *Allen Park Retirees Ass'n, Inc v Allen Park*, 329 Mich App 430, 443; 942 NW2d 618 (2019). A motion under MCR 2.116(C)(7) is appropriate where there has been an "assignment or other disposition of the claim before commencement of the action." MCR 2.116(C)(7). In reviewing a motion under MCR 2.116(C)(7), "[t]he contents of the complaint must be accepted as true unless contradicted by the documentary evidence, which must be viewed in a light most favorable to the nonmoving party." *Allen Park Retirees Ass'n, Inc*, 329 Mich App at 444. "If there is no factual dispute, the determination whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law." *Id.*

Summary disposition is appropriate under (C)(8) when a party fails to state a claim on which relief can be granted and is appropriate under (C)(10) when there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 425; 770 NW2d 105 (2009).

## B. REAL PARTY IN INTEREST

Under MCR 2.201(B), "[a]n action must be prosecuted in the name of the real party in interest[.]" "A real party in interest is the one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (quotation marks and citation omitted). The real party in interest rule " 'requir[es] that the claim be prosecuted by the party who by the substantive law in question owns the claim' that is asserted in the complaint." *Estate of Maki v Coen*, 318 Mich App 532, 539; 899 NW2d 111 (2017), quoting *In re Beatrice Rottenberg Trust*, 300 Mich App 339, 356; 833 NW2d 384 (2013). "A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Barclae*, 300 Mich App at 483 (quotation marks and citation omitted). The real party in interest doctrine is a "standing doctrine" that "recognizes that litigation should be begun only by a party having an interest that will assure sincere and vigorous advocacy" and "protects a defendant from multiple lawsuits for the same cause of action." *Id.* (quotation marks and citation omitted).

"[A]lthough the principle of statutory standing overlaps significantly with the real-party-in-interest rule, they are distinct concepts." *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 355. Statutory standing is a jurisdictional principle, while "the real-party-in-interest rule is essentially a prudential limitation on a litigant's ability to raise the legal rights of another." *Id*. "[I]f a party lacks statutory standing, then the court generally lacks jurisdiction to entertain the proceeding or reach the merits." *Id*., citing *Miller v Allstate Ins Co*, 481 Mich 601, 608-612; 751 NW2d 463 (2008); see also *Grady v Wambach*, 339 Mich App 325, 330; 984 NW2d 463 (2021). Jurisdiction is not an issue in this case.

With respect to assignments, the general rule is that "an assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor." *Cannon Twp v Rockford Pub Schs*, 311 Mich App 403, 412; 875 NW2d 242 (2015). Once a valid assignment occurs, the assignee then stands in the shoes of the assignor and may enforce the rights assigned. "[A]n assignment divests the assignor of any interest in the subject matter of the assignment." 6A CJS, Assignments, § 88. Thus, because a legal assignment vests the right to enforce the rights in the assignee, an assignor retains no rights to enforce the rights after they have been assigned, i.e., the assignor loses the right that allows her to prosecute the claim.

## C. FILING A LAWSUIT TO COLLECT ON MEDICAL BILLS WHEN THE RIGHT TO COLLECT WAS PREVIOUSLY ASSIGNED

Pursuant to the no-fault act,[3] insured individuals may recover PIP benefits for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Under this provision, plaintiff could have pursued her PIP claims against SMART, but she did not. Instead, she assigned the right to bring those claims to her medical providers. Although medical providers also have an independent statutory right to bring a claim to recover for services rendered, under MCL 500.3112, that statute does not address the legal effect of an assignment on an insured's maintaining an action to collect benefits that were the subject of an assignment.

Though plaintiff had a statutory right to seek payment of certain medical benefits, she instead opted to transfer that right to the medical providers, an option she had and was free to exercise. *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 217 n 40; 895 NW2d 490 (2017). "No particular form of words is required for an assignment, but the assignor must manifest an intent to transfer and must not retain any control or any power of revocation." *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004) (quotation marks and citation omitted). SMART does not contest the validity of the assignments.

At the time plaintiff commenced this action, she was not the real party in interest because plaintiff's rights to recover the unpaid medical bills were divested by virtue of the assignments. See *Estate of Maki*, 318 Mich App at 539 (providing that the real party in interest rule "requir[es] that the claim be prosecuted by the party who by the substantive law in question owns the claim

---

[3] MCL 500.3101 *et seq.*

that is asserted in the complaint.") (alteration in original; quotation marks and citation omitted). As noted at the outset, following the assignment of these claims the "assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor." *Cannon Twp*, 311 Mich App at 412. "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt*, 260 Mich App at 653. That being the case, the medical providers as assignees held the right to seek to recover the unpaid medical bills, and plaintiff no longer had a cause of action to pursue, having transferred it away. *Cannon Twp*, 311 Mich App at 412 ("an assignee of a cause of action becomes the real party in interest with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor.").[4]

Although the medical providers, as the real parties in interest, owned the right to bring an action to recover the unpaid medical bills, the record shows that, except for one provider, none of the medical providers utilized the assignment by bringing suit within a year of providing the services. MCL 500.3145(1). Thus, the medical provider's rights under the assignment were statutorily barred. While plaintiff timely sued to recover the cost of the medical services, she had assigned those rights to the medical providers, who were now the real parties in interest. In order to remedy that situation, the revocations were signed during the course of the trial court proceedings and contained the "nunc pro tunc" language in an attempt to essentially eradicate the original assignments. The attempt, though creative, did not have the intended effect.

*Nunc pro tunc* refers to a court's inherent power to give modifications to its own orders and judgments retroactive effect in order to make a record of what actually occurred but that had been omitted from the order. Michigan Pleading & Practice (2d ed), § 19.43. See also *Shifferd v Gholston*, 184 Mich App 240, 243; 457 NW2d 58 (1990) ("An entry nunc pro tunc is proper to supply an omission in the record of action really had, but omitted through inadvertence or mistake") and *Grand Rapids v Coit*, 151 Mich 109, 109; 114 NW 880 (1908). "The function of such an order is to supply an Omission in the record of action previously taken by the court but not properly recorded; an order nunc pro tunc may not be utilized to supply previously omitted action." *Sleboede v Sleboede*, 384 Mich 555, 558-559; 184 NW2d 923 (1971).

The term "*nunc pro tunc*" has also been used in reference to licensing assignments in some federal patent and trademark decisions, holding that a *nunc pro tunc* assignment may not be used to cure a standing defect; rather, the party filing suit must have had standing to sue when the complaint was filed. See *Enzo APA & Son, Inc v Geapag AG*, 134 F3d 1090, 1093 (CA Fed, 1998) (one must hold legal title to the patent to sue for infringement of the patent; "nunc pro tunc assignments are not sufficient to confer retroactive standing") and *Gaia Technologies, Inc v Reconversion Technologies, Inc*, 93 F3d 774, 777, 779-780 (CA Fed, 1996) (like other personal

---

[4] Although a valid assignment is one in which the assignor "manifest[s] an intent to transfer and must not retain any control or any power of revocation," *Burkhardt*, 260 Mich App at 655, as a matter of contract plaintiff was free to subsequently negotiate with the medical providers to revoke the assignments or transfer the assignments to her to allow her to pursue those claims.

property, patents, and trademarks may be assigned to others, and a *nunc pro tunc* assignment executed after a lawsuit is filed may not retroactively confer standing).

The court in *Enzo APA & Son,* 134 F3d 1090, came to the same conclusion:

[A]s has been aptly stated, nunc pro tunc assignments are not sufficient to confer retroactive standing on the basis that:

As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day. [*Id.* at 1093-1094, quoting *Procter & Gamble Co v Paragon Trade Brands, Inc*, 917 F Supp 305, 310 (D Del, 1995).]

While the present case is not a patent or trademark case, the same logic applies: one must be the real party in interest at the time the lawsuit is filed, and a retroactive, or *nunc pro tunc*, revocation may not be used to correct a factual problem that existed when the lawsuit was filed. While plaintiff and her medical providers were at liberty to mutually decide to revoke the assignments, the revocations were effective as of the date that the revocations were executed and could not essentially eliminate the fact that the assignments had occurred prior to plaintiff filing suit. And, the medical providers had no timely claims to return to plaintiff as of the date of the revocations because the revocations occurred more than a year after services were rendered. Thus, the mutual revocations did not reassign any timely claims to plaintiff.

Plaintiff further argues that mutual revocation of an agreement returns the parties to the status quo as it existed prior to the assignment. While this may be true in some cases, the same cannot be said when the revocation occurs after the time for performance matures or the rights of the parties become fixed. "An assignment may be revoked before the rights of the parties become fixed." 6A CJS, Assignments § 71. Thus, although the revocation may have some effect between plaintiff and the medical providers, as to defendant and the court, it cannot impact how plaintiff stood at the time the complaint was filed:

As an assignee, appellant can stand in no better position than the assignor. And since the Fund was barred by the statute of limitations, so was appellant. Their attempt to make the assignment retroactive to the date the complaint was filed may have some meaning between them, but it is meaningless as to third parties. [*Stephens v Textron, Inc*, 127 Ariz 227, 230; 619 P2d 736 (1980) (citation omitted).]

Here, it is undisputed that at the time she filed the complaint, plaintiff had assigned her rights to recover the unpaid medical bills to her medical providers. Because the rights of plaintiff viz-a-viz defendant and the court had essentially become fixed under the assignment agreements, the

revocations could not impact plaintiff's status at the time the complaint was filed. Because plaintiff was not a real party in interest at the time she filed the lawsuit, the trial court erred in denying defendant's motion for summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray
/s/ Brock A. Swartzle