*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW IKLE,

        Plaintiff/Counterdefendant-
        Appellee/Cross-Appellant,

v

DANIEL GOEBEL and BERT L.
KNICKERBOCKER,

        Defendants/Counterplaintiffs-
        Appellants/Cross-Appellees,

and

KERRY A. FRITTS, ALINA L. FRITTS, BARRY
C. FRITTS, THERESA A. KNICKERBOCKER,

        Defendants/Counterplaintiffs,

and

GENOA TOWNSHIP and ANDRA RUSH,

        Defendants-Appellees,

and

JOSEPH ANZALONE, SERENA ANZALONE,
GEORGE BEHER, JOANNE BEHER, WM
BEHER, MARGARET BEHER, G. RICHARD
BEHER, CORAL BLACK, MARK COLLINS,
CINDY CORBIN, LARRY CORBIN, KATHY
DURFEE, MICHAEL DURFEE, BEVERLY A.
FAVOR, JEFFREY GAGACKI, MARLENE
GAGACKI, PARTICK J. MONETTE, SANDRA
MONETTE, JUDITH PHILLIPS, RONALD LEWIS
RICE, JACK TEEGARDIN, NANCY
TEEGARDIN, CHRISTOPHER A. DAVIS,
LESTER DAVIS, JACK SMITH, JUDY LOCH,

UNPUBLISHED
December 21, 2023

No. 360854
Livingston Circuit Court
LC No. 18-029855-CZ

-1-

RUBEN BARRIOS, MICHELLE BARRIOS, LAUREN E. ALM, JOHN M. STREMICK TRUST, JOHN M. STREMICK, RICHARD A. WOLFRAM, MICHELLE A. WOLFRAM, ROBERT BEHER, KAY BEHER, ANDREW REA, DORIS CASPER TRUST, DORIS CASPER, YVETTE WHITESIDE, DORIS AVEY LIFE ESTATE, DORIS AVEY, ALLEN WALBLAY, VIKKI WALBLAY, CAROL J. HOLCOMB, RANDALL WILT, MARYLOU WILT, MICHAEL J. WRIGHT, ERIC NITSCHMAN, WENDY NITSCHMAN, WILLIAM COZART, TRYGVE HAUG, DIANE HAUG, BENJAMIN CROSS, MICHAEL JONES, 5645 GRAND RIVER, LLC, JOHN WARSOP, KAREN WARSOP, MARK A. PETERS, AMANDA SMYKLA, BERNARD VANHEUSDEN, KAREN CHOUINARD, 5611 E. GRAND RIVER, LLC, ARNOLD STEPHENS LIVING TRUST, ARNOLD STEPHENS, 5587 E. GRAND RIVER, LLC, BRANDON DENBY, RYAN W. BRADFORD, MICHELLE L. BRADFORD, MICHAEL KUPFER, JILL KUPFER, NANCY NOWAK, DENNIS COURTER, JACQUELINE COURTER, LORI MERITT, MICHAEL F. MERITT, THOMAS KNIVILA, JACQUELINE KNIVILA, THOMAS R. WOLFE, ANN R. WOLFE, ROBERT BIALOWICZ, SANDRA BIALOWICZ, RAYMOND AND HOLLY COPPIELLIE LIFE ESTATE, RAYMOND COPPIELLIE, HOLLY COPPIELLIE, PATRICK J. FISCHER, ROBIN L. FISCHER, MELVIN A. TESCHKER, DEBRA M. KROGE, CHAD NEWTON, RHONDA NEWTON, JOHN S. JONES, RICHARD A. CORRUNKER, LORETTA G. CORRUNKER, JOSEPH TIANO, DENNING FAMILY TRUST, CHARLES DENNING, MARY DENNING, DONNA ANDERSON, MICHAEL D. FARNSWORTH, JEFFREY HOWARD, DARLENE HOWARD, LOUKAS N. KOVANIS, BRADLEY HOYES, KRISTIN HOYES, ELDON HAWES, MARQUERITE E. HAWES, NAKOS KOVANIS, ANTHONY DUBANIK JR., ANNETTE M. DUBANIK, ROBIN FREY, BEVERLY ROONEY, ROBERT NAUGHTON JR., JASON SEE, HEATHER SEE, JEREMY D. GRANTHAM, KAMIL KOWALSKI, SAMANTHA L. BROUGH,

SEAN WILSON, MATTHEW MARHOFER, DANIEL ALLEN, STEPHANIE ALLEN, JOHN D. DENBROCK, CHRIS BONK, LYNN BONK, RALPH J. CHRISTENSEN, LAURA M. CHRISTENSEN, KATIE MCALISTER, CLARIUS KEEP AND JERRY DUNN REVOCABLE LIVING TRUST, CLARIUS KEEP, JERRY DUNN, STEVEN F. LYNCH, JACK AND JUDY PHILLIPS REVOCABLE TRUST, JACK PHILLIPS, RYAN W. HOFFECKER, WILLIAM HOFFECKER, SHARON HOFFECKER, MARY ELLEN TIBALDI, DAVID LARSON, PATRICIA LARSON, DAVID D. AZAR, JENNIFER LEVARIO, DAVID A. BRAUN, BRIGHT PENNY, INC.,  GERALD MATEVIA, JOYCE MATEVIA, DARIN MARCH, TAMMY PARISIAN, RICK DONALD, and MARK DONALD,

   Defendants,
and

PETE BLACK, SUZANNE KOWALSKI, JEFFREY T. BROUGH, TREVOR HAAK, BARBARA HAAK, and PATRICIA LOTH,

   Defendants-Appellants/Cross-
   Appellees,
and

CHAD NEWTON, RHONDA NEWTON, RYAN W. BRADFORD, and MICHELLE L. BRADFORD,

   Defendants/Third-Party Defendants,
and

KELLY NOWICKI, NATE PRESSOTTO, AMANDA PRESSOTTO, JIM TIBALDI, JAMES KUDIAWIEC, MARY KUDIAWIEC, MARY KUDIAWIEC, and PATRICIA EILEEN CROCKETT,

   Appellants/Cross-Appellees.

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

This case concerns which subdivision lot owners, if any, have riparian rights to lakefront parks dedicated to the "use of Lot Owners." The trial court determined that the "front-lot owners," i.e., owners whose lots are adjacent to the park areas but not the lakeshore, are the fee owners of the park area between their respective parcels and the lake, and therefore have the sole riparian rights to maintain docks and moor boats. The trial court further determined that the "back-lot owners," i.e., owners whose lots are separated from the park areas by the front lots, have a nonriparian easement to use the park areas for various recreational activities. Appellants, a group comprised of back-lot owners, appeal the trial's court ruling by right. For the reasons stated in this opinion, we reverse the trial court's decision, vacate the judgment and permanent injunction, and remand for further proceedings.

## I. BACKGROUND

The Glen Echo subdivision plat was dedicated in 1921 and consists of 179 lots. The plat shows park areas in the subdivision that abut Lake Chemung in Genoa Township. Central to this appeal, the plat contains the following dedication: "[T]hat the Parks, Paths, and Canals as shown in said plat are hereby dedicated to the use of Lot Owners in said plat."

This case arose out of a dispute regarding the park area in front of lots 35 and 36, which plaintiff Mark Ikle purchased in 2015. There is a six-foot wide walkway between Ikle's lots and the adjacent park area. Previously, an apartment building was located on lots 35 and 36. The apartment building burned down in 2009, and the lots became vacant. Ikle built a residence on the lots and began disputing with certain back-lot owners regarding their use of the park area. Relevant to this appeal, Ikle asserted that the back-lot owners could not maintain docks in the park area. In May 2018, Ikle filed this instant suit seeking a declaratory judgment that the plat dedication merely granted the back-lot owners a nonriparian easement to the park areas. Ikle later filed an amended complaint expressly asserting ownership of the park area.

The original defendants[1] were back-lot owners who had used the park area in front of Ikle's lots for picnics and large gatherings. Two of the original defendants installed docks in the park area to which they moored their boats. The original defendants filed a counterclaim, seeking a declaratory judgment allowing them to engage in these activities. After a motion by the original defendants, the trial court ordered Ikle to amend his complaint to add all Glen Echo lot owners and Genoa Township as defendants; the Township was later dismissed from the case.

In October 2020, the parties filed dispositive motions under MCR 2.116(C)(10) (no genuine issue of material fact). The original defendants argued that the plat dedication provided equal rights to all lot owners for use of the park and that there was no basis in Michigan caselaw to conclude that Ikle obtained exclusive riparian rights to the lake. They further argued that the

---

[1] The original defendants were Daniel Goebel, Kerry and Alina Fritts, Barry Fritts, and Bert and Theresa Knickerbocker.

evidence showed the park area in front of Ikle's lots was historically used for the installation of docks and boat mooring. Ikle argued that he was the owner of the underlying fee in the park area because his land abutted the park, relying on *Thies v Howland*, 424 Mich 282; 380 NW2d 463 (1985), which held that property separated from the lakeshore by a subdivision walkway had riparian rights. In response, the original defendants argued that the controlling case was *Dobie v Morrison*, 227 Mich App 536; 575 NW2d 817 (1998), which distinguished *Thies* when the front-lot owner's property was separated from the lake by a park.

On March 5, 2021, the trial court issued an opinion and order granting summary disposition to Ikle. After summarizing the procedural history and relevant caselaw, specifically *Thies*, 424 Mich 282, and *Dobie*, 227 Mich App 536, the trial court held that the front-lot owners have fee ownership of the park areas between their lots and the lakefront, and that the back-lot owners have an easement to use the park, excluding riparian rights. The trial court observed that *Dobie* had distinguished a park from a walkway, but nonetheless applied the standard established by *Thies* and other cases that owners of land abutting any right-of-way which is contiguous to the water are presumed to own the fee in the entire way, subject to an easement, unless a contrary intention appears. The trial court concluded that there was no evidence in this case to counter this presumption. Turning to the scope of the easement held by the back-lot owners, the trial court determined that the back-lot owners could use the park areas for walking, sunbathing, picnicking, barbecues, reasonable fire pits, and access to the lake for purposes of fishing, swimming, and launching small, unmotorized boats.

On March 10, 2022, a judgment and permanent injunction was entered incorporating the trial court's summary-disposition rulings.[2] This appeal followed. Michigan Realtors filed an amicus brief in support of appellants' arguments on appeal. The Township filed a brief requesting that this Court clarify if changes are needed to the recorded plat. Ikle cross-appeals on a narrow issue regarding the trial court's determination that front-lot owners could not store personal property in the park.

## II. DISCUSSION

### A. FEE OWNERSHIP OF THE PARK AREAS

Appellants first argue the trial court erred by ruling that the front-lot owners are the fee owners of the park areas abutting the lake shore. We agree.[3] Michigan caselaw establishes that

---

[2] A substantively identical default judgment and permanent injunction was entered as to the defendant-lot owners who had defaulted in the proceedings.

[3] A trial court's decision on a motion for summary disposition is reviewed de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). When reviewing a motion under MCR 2.116(C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002). Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled

all lot owners have an irrevocable easement to the park. Neither the plat language nor the facts of this case support the conclusion that any lot owner has fee ownership of the park areas.

"Land which includes or is bounded by a natural watercourse is defined as riparian." *Thies*, 424 Mich at 287-288. "Owners of riparian land enjoy certain exclusive rights, including the rights to erect and maintain docks and to permanently anchor boats off the shore." *Morse v Colitti*, 317 Mich App 526, 534; 896 NW2d 15 (2016). "A nonriparian owner, on the other hand, has a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming, as well as the right to anchor boats temporarily." *Astemborski v Manetta*, 341 Mich App 190, 196; 988 NW2d 857 (2022) (quotation marks and citation omitted). However, "rights normally afforded exclusively to riparian landowners may be conferred by easement." *Little v Kin,* 249 Mich App 502, 511; 644 NW2d 375 (2002), aff'd 468 Mich 699 (2003).

The two primary cases relevant to this issue are *Thies* and *Dobie*. In *Thies*, the plaintiffs owned front lots that abutted a subdivision walkway running along the lakeshore; the defendants owned back lots. *Thies*, 424 Mich at 286. The plaintiffs sought to enjoin the defendants from building a dock and permanently anchoring a boat on the shoreline in front of the plaintiffs' property, and the defendants argued that "the plat's dedication of the walk and alleys to 'the joint use of all the owners of the plat' gave them title to these lands in common with the other subdivision owners." *Id*. at 286-89. The Supreme Court disagreed that the defendants had riparian rights of the lakeshore walk as tenants in common. "[O]wners of land abutting a street are presumed to own the fee in the street to the center," and so the question before the Court was "who owns the other half of the way which is clearly riparian property—the plattors, the 'front lot' owners, or the persons to whom the way is dedicated?" *Id*. at 291. The Court determined that this question was settled by *Croucher v Wooster*, 271 Mich 337; 260 NW 739 (1935), which held that a lot separated from the water by a highway contiguous to the water is riparian land. Applying this holding in *Thies*, the Court did not find that there was a material distinction between a public highway and a private walkway:

> Although *Croucher* . . . discussed only land abutting public ways, the holding of these cases can be stated more broadly: Unless a contrary intention appears, owners of land abutting any right of way which is contiguous to the water are presumed to own the fee in the entire way, subject to the easement. Since the owner's property is deemed to run to the water, it is riparian property. Thus, plaintiffs are presumed to own the fee in the walk running along the front of their lots unless the plattors intended otherwise. [*Thies*, 424 Mich at 293 (citations omitted).]

---

to judgment as a matter of law. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The Court then examined the plat dedication and concluded that it did not evince a different intent, and therefore affirmed the trial court's finding that the phrase "joint use" merely granted an easement to the back-lot defendants. *Id*. at 293-294.

In *Dobie*, the front-lot plaintiffs were separated from the lakeshore by a subdivision park rather than a road or walkway. The plaintiffs, whose lot was previously owned by the plat proprietors, argued that riparian rights attached to their property, and the back-lot defendants opposed. *Dobie*, 227 Mich App at 537. This Court agreed with the defendants that *Thies* did not control the outcome of the plaintiffs' claim because there was a material difference between a lot being separated from the water by a walkway and by a park:

> Defendants distinguish *Thies* by arguing that the holding should be confined to a right of way and not extended to the park in this case. We agree that this case is not controlled by *Thies*. Although the park in this case was primarily created to provide the back lot owners with access to the lakefront, a park is not the same as a right of way. The reasoning in *Thies* was predicated on a mere walkway dividing the riparian owners from the body of water in that case. We do not regard it as appropriate to compare a narrow walkway along a body of water to the relatively large park in this case. Absent a contrary indication, it is eminently reasonable to presume that a walkway along a lake was placed merely as an easement to provide access to the lake and not with the intent to convey actual fee ownership of the land containing the walkway. The same is simply not true of the relatively large park in this case. [*Id*. at 539-540 (citation omitted).]

However, this Court nonetheless concluded that, under the circumstances of that case, the plat proprietors intended to retain fee ownership of the park, and therefore the plaintiffs, as the successor owners, also had ownership of the park and riparian rights. *Id*. at 540. This Court reasoned, in part, that:

> The dedication provided that the park was dedicated to "*the use* of the owners of lots in this plat which have no lake frontage" (emphasis supplied), but did not explicitly purport to transfer ownership of the park from plaintiffs' predecessors . . . to all the back lot owners. We find the language used to be more consistent with the grant of an easement rather than a grant of fee ownership rights. Further, undisputed testimony that [one of the plattors] had supplied the park with electricity, portable toilets, and picnic tables supports the conclusion that the [plattors] intended to retain general control and, accordingly, ownership of the park. [*Id*.]

*Dobie* went on to address the scope of the back-lot owners' easement, which will be discussed in in Part II-B of this opinion.

Returning to this case, we agree with appellants that the trial court misapplied *Dobie*. The trial court correctly recognized that *Dobie* distinguished a park from a walkway, but then concluded that *Dobie* did not change the "the previous standard provided by these earlier cases[, i.e., *Croucher* and *Thies*,] that owners of land abutting any right of way which is contiguous to the water are presumed to own the fee in the entire way, subject to an easement 'unless a contrary

intention appears,' " quoting *Thies*, 424 Mich at 293. *Dobie* plainly establishes, however, that there is no presumption that front-lot owners are the fee owners of adjacent parks. *Dobie* expressly declined to apply the presumption established by *Thies* to parks, and instead held that the plaintiffs had fee ownership of the park under the plat language and facts of the case. See *Dobie*, 227 Mich App at 539-540. Specifically, the plat language distinguished between front-lot owners and back-lot owners by providing that the park was for the "use of the owners of the lots in this plat which have no lake frontage." *Id*. at 540. This conveyance showed that the original plattors were merely granting an easement to the back-lot owners and that they intended to retain fee ownership of the park. *Id*. This conclusion was supported by the fact that the plattors supplied the park with electricity, portable toilets, and picnic tables. *Id*. Finally, the plaintiffs in *Dobie* were direct successors to the original plattors. For these reasons, the plaintiffs (as opposed to all front-lot owners) were deemed to be the owners of the lakeshore park. *Id*.

Our reading of the caselaw is consistent with three unpublished opinions of this Court holding that there is no rule or presumption that front-lot owners have fee ownership over adjacent parks. See *Virginia Park Subdivision Ass'n v Brown*, unpublished per curiam opinion of the Court of Appeals, issued January 10, 2019 (Docket Nos. 339762, 339808), p 10; *Horseshoe Lake Corp v Carlson*, unpublished per curiam opinion of the Court of Appeals, issued August 2, 2012 (Docket No. 304695), p 5; *Locust Land Resort, LLC v Thiebaut*, unpublished per curiam of the Court of Appeals, issued February 24, 2009 (Docket No. 279061), p 4. Although these opinions are not binding precedent, they can still be considered "instructive and persuasive." *Barclae v Zarb*, 300 Mich App 455, 469; 834 NW2d 100 (2013). We find particularly instructive the discussion in *Virginia Park* of why the rule established by *Croucher* and *Thies* with respect to roads and walkways does not apply when the owner's property is separated from the water by a park. The panel explained that the rule established by those cases—that a lot separated from the water by a road or walkway that is contiguous to the water is riparian land—was:

> [B]ased on the well-established principle that owners of land abutting a road retain ownership of the fee underlying the road subject to the easement. While a landowner's fee interest in the road typically only extends to the center of the road, when the other side of the road abuts the shoreline rather than another parcel of land, the fee interest instead continues to the water. *Thies*, 424 Mich at 291-292. Hence, the possession of riparian rights by owners of property separated from the shoreline by only a road or walkway is *grounded in the legal principles generally applicable to owners of property abutting roads*. This rule is not based on the mere fact that such a property owner is closer to the water than the owner of what may be called a "back lot." [*Virginia Subdivision*, unpub op at 9 (emphasis added).]

Stated differently, the rationale for the rule stated in *Thies* has no application to similar situations involving parks. There is no rule of law that would give a landowner an underlying fee to the middle of an adjacent park, such that this ownership could be extended to a shoreline abutting the park. The panel concluded that:

> *Dobie* merely stands for the proposition that a plat's dedication of a park for "the use" of certain lot owners conveys only an easement to those lot owners, and the contemporaneous facts and circumstances may determine the ownership of the park when the dedication is silent as to the allocation of the ownership interest in the

-8-

park. Furthermore, *Dobie* makes clear that the rules announced in *Croucher* and *Thies* apply to easements in the form of roads or walkways and do not somehow automatically apply to all forms of easements that could potentially separate a lot from the shoreline. More specifically, *Dobie* rejected the extension of the rule for roads and walkways to an easement granted for purposes of maintaining a private park. [*Id*. at 10.]

We find this reasoning persuasive and adopt it in the present case. The trial court erred by applying a presumption that the front-lot owners have fee ownership of the park. *Dobie*, as well as the unpublished caselaw cited above, make clear that the presumption established in *Thies* has no application to parks. Further, these cases show that the plat language and facts of each case control the lot owners' respective rights and interests to the park. These matters will now be addressed.

"When interpreting a plat, this Court seeks to effectuate the intent of the plattor." *Morse*, 317 Mich App at 534. The intent of the plattors must be determined from the language they used. *Thies*, 424 Mich at 293. "[D]edications of land for private use in plats before 1967 PA 288 took effect convey at least an irrevocable easement in the dedicated land." *Little v Hirschman*, 469 Mich 553, 564; 677 NW2d 319 (2004).

The plat dedication in this case stated that the parks were "dedicated to *the use* of Lot Owners in said plat." (Emphasis added). The language "to the use of" indicates a conveyance of an easement rather than a fee interest. See *Thies*, 424 Mich at 293; *Dobie*, 227 Mich App at 540. See also *Morse*, 317 Mich App at 534 ("Because language dedicating land for 'the use' of others is consistent with a grant of an easement, not a grant of fee ownership, the plat granted an easement in the Park.") (citation omitted). Further, unlike in *Dobie*, Ikle is not the successor-in-interest to the original plattors, and the plat language in this case did not distinguish between back- and front-lot owners. These were the crucial facts that led to this Court's holding that the plaintiffs in *Dobie* had fee ownership of the park. There is evidence in this case that front-lot and back-lot owners helped maintain the park areas, but this alone is not enough to show that the plattors intended to convey fee ownership to the lot owners.

Appellants have adopted a slightly different argument on appeal,[4] now arguing that the plattors intended to convey fee ownership of the park to *all* of the lot owners. Appellants' argument in support of this position is difficult to follow. They seem to argue that it would be superfluous for the plattors to include "parks" in the plat dedication if all that was intended was mere access to the parks, because the inclusion of "paths" allows the lot owners to traverse the park pathways. This argument assumes, however, that the "use" of the park is limited to walking the paths, but there is no indication that this is the case. Indeed, under the trial court's ruling, all lot owners could use the park for a variety of activities such as picnics, bonfires, swimming, and

---

[4] While appellants did not make this precise argument before the trial court, "so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020).

canoeing.  Appellants provide no other argument in support of their position that the plattors intended to convey fee ownership to all lot owners.  As discussed, caselaw establishes that the phrase "to the use of" the lot owners is consistent with the grant of an easement.

In sum, the trial court erred by holding that the front-lot owners have fee ownership of the park areas and the corresponding riparian rights.  The plat dedication granted an easement to all lot owners for use of the park areas, and no lot owner has established fee ownership of the park areas.  That said, it is possible that the scope of the easement includes riparian rights.  See *Thies*, 424 Mich at 289 ("Even if we conclude that defendants merely have an easement interest in the walk and alleys, they may still prevail.  Plaintiffs cannot prevent defendants from erecting a dock or permanently anchoring their boats if these activities are within the scope of the plat's dedication.").  The scope of the easement will be discussed next.

## B.  SCOPE OF THE EASEMENT

Appellants argue that the trial court erred by not finding that the scope of the easement includes installing docks and mooring boats.  We conclude that remand is necessary for the trial court to redetermine the scope of the easement after an evidentiary hearing.

"Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted."  *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003).  "If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement."  *Id*.  Generally, the scope of an easement is a question of fact.  *Morse*, 317 Mich App at 534.

We agree with appellants that the plat dedication is ambiguous because it does not identify the permitted uses of the park areas.  Accordingly, extrinsic evidence may be considered to the determine the scope of the easement.  *Kin*, 468 Mich at 700.  In *Dobie*, this Court affirmed the trial court's findings that the scope of the dedication permitted the back-lot defendants to use the park "as they had done 'traditionally and historically,' " including the construction of one dock and seasonal mooring of boats, and that this did not unreasonably interfere with the front-lot plaintiffs' use of the property.  *Dobie*, 227 Mich App at 541-542.

Relying on *Dobie*, appellants argue that the trial court erred by not considering the traditional and historical use of the park areas.  The trial court cited *Dobie* for that proposition and proceeded to find that the back-lot owners could use the park for walking, sunbathing, picnicking, barbeques, reasonable fire pits, and access to the lake for purposes of fishing, swimming, and launching small, unmotorized boats.  It is clear that, in making this determination, the trial court *did* consider the traditional and historical use of the park according to the deposition testimony and affidavits provided by the original defendants in their motion for summary disposition.  That said, appellants are correct that the trial court declined to consider the back-lot owners' historical use of docks and boat moorings in the park areas.  Presumably, the trial court did not consider that evidence because it concluded that the front-lot owners had fee ownership, and therefore riparian rights, to the park.  In any event, because the trial court erroneously held that the front-lot owners have fee ownership of the park, we must also reverse the trial court's derivative ruling regarding the scope of the easement.

-10-

It would be improper for us to decide the scope of the easement, as appellants request, because this Court does not make factual findings. See *In re Martin*, 200 Mich App 703, 717; 504 NW2d 917 (1993). Further, the evidence regarding the traditional and historical use of the park areas is not so clear-cut that reasonable minds could not differ on the outcome. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Ikle provided affidavits from prior owners and operators of the apartment building regarding the park area in front of lots 35 and 36. Collectively, these individuals attested that from the mid-1970s until the apartment building burned down in 2009, the park area in front of the apartment building was mowed and maintained by the apartment building operator, and that the only dock on the waterfront in this area belonged to the apartment building. On the other hand, two of the original defendants testified that they installed docks in the park area after the apartment building burned down, and a third defendant, Bert Knickerbocker, purchased two back lots in 1995 and testified that docks were placed in the park areas on a "first come, first served" basis. We make no comments as to how this evidence should be interpreted by the trial court in determining the scope of the easement. However, it is clear that all lot owners' use of the park areas should be considered by the trial court, so long as this case concerns the entire subdivision and not just the park area in front of Ikle's lots.[5]

Ikle argues that, whether the easement allows back-lot owners to install docks and moor boats is a moot issue, because, under the trial court's July 16, 2020 order, there exists no legal outcome where the back-lot owners would be allowed to do so under the Township zoning ordinance. In February 2020, Ikle moved for a declaratory judgment regarding the interpretation of the zoning ordinance and dismissal of the Township. Ikle asserted that the Township was added as a party in this case because of the impact of the Township's zoning ordinance on the parties' respective claims. Ikle further argued that, regardless of the outcome in this case, the back-lot owners would be precluded by the zoning ordinance from constructing a dock on the park shoreline. On July 16, 2020, the trial court entered an order dismissing the Township and ruling that (1) if Ikle's claim was successful, only he could maintain a dock on the subject parcel pursuant to Section 11.04.05(b) (limiting lots to one dock) of the zoning ordinance, and (2) if Ikle's claim was not successful, a party may only maintain a dock on the parcel as provided under Section 13.03.03.[6] Those rulings also applied to the other front-lot owners.

---

[5] Along these lines, we note the trial court plainly erred by deciding whether any front-lot owner could continue maintaining a dock in their respective park areas under theories of adverse possession, acquiescence, or abandonment. Those potential claims were raised by certain front-lot owners at the summary-disposition hearing, but were not briefed. Nonetheless, the trial court decided these issues against the front-lot owners in its March 5, 2021 opinion and order. Because we are reversing the trial court's March 5, 2021 opinion and order in full, a front-lot owner may raise these claims on remand, but we express no opinion on the viability of these claims.

[6] Section 13.03 is the "Keyhole" ordinance, governing Riparian Common Lot Use. Section 13.03.03 governs "existing keyholes," providing:

> Lots of record which existed prior to the effective date of this section (4/15/95) that provided common use access to a water body may continue to provide riparian rights subject to the marina operating permit requirements of the Michigan

Appellants were not precluded from challenging this earlier order in their appeal, see *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009), but have not done so. Appellants have made no substantive argument as to why the trial court's interpretation of the ordinance was erroneous. Accordingly, whether the trial court correctly interpreted the ordinance is not before us on appeal. That said, we disagree with Ikle's suggestion that the trial court's order definitively establishes that the back-lot owners may not maintain a dock under the ordinance. The trial court merely held that Section 13.03.03 is the governing ordinance for any dock to be placed in the park areas. The trial court later clarified that its ruling did not prohibit the Township from enforcing its ordinances, and that it had "made no determination as [to] whether any dock in Lake Chemung from the park is in violation of those ordinances[.]" For these reasons, whether the ordinance would preclude placement of a dock in any of the park areas is not a question before this Court, and has no bearing on the initial determination of the scope of the easement.

## C. REMAINING ISSUES

Our resolution of the above issues renders moot the remaining arguments on appeal.

> Generally, this Court does not address moot questions or declare legal principles that have no practical effect in a case. Mootness occurs when an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy. [*Flynn v Ottawa Co Dep't of Pub Health*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359774); slip op at 5 (quotation marks and citation omitted).]

Appellants' final argument raised on appeal is that the trial court erred by not applying the doctrines of unclean hands and equitable estoppel to preclude Ikle from making a claim of fee ownership of the park. Appellants contend that these doctrines should apply on the basis of Ikle's successful argument to the Michigan Tax Tribunal that his lots were not waterfront property. However, because we hold that the front-lot owners do not have fee ownership of the park areas, appellants have been afforded their requested relief and this issue would have no practical legal effect on the existing controversy. Further, the conclusion that no lot owner has fee ownership of the park also renders moot the Township's request that this Court require changes to the plat documented in public record. Ikle's cross-appeal concerning the storage of personal property in the park areas is moot because we are vacating the judgment and permanent injunction.

---

Department of Environmental Quality (MDEQ) under the Michigan Inland Lakes and Streams Act (Public Act 346 of 1972).

## III. CONCLUSION

We reverse the March 5, 2021 opinion and order granting summary disposition, and vacate the March 10, 2022 judgment and permanent injunction.[7]  Remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

---

[7] The default judgment and permanent injunction entered on the same day is also vacated.